**City of Park Ridge, Appellee, v. J. Kussy et al., Defendants. Coca-Cola Bottling Co. of Chicago, Inc., Appellant.**

**Gen. No. 41,329.**

Opinion filed November 26, 1940.

JOSEPH P. SAVAGE, of Chicago, for appellant; W. F. McLAUGHLIN and A. D. McMAHON, both of Chicago, of counsel.

MONAHAN & MONAHAN, of Chicago, for appellee; ROBERT J. MONAHAN and THOMAS A. MATTHEWS, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Cook county that the City of Park Ridge, appellee (hereinafter called plaintiff), recover from appellant, Coca-Cola Bottling Co. of Chicago, Inc. (hereinafter called defendant), the sum of ten dollars and costs for violation of an ordinance regulating vehicles carrying foodstuffs.

The cause was submitted to the court on the following stipulation:

". . . that the trial court may take judicial notice of all relevant ordinances of the City of Park Ridge, Illinois, and of the ordinances of the City of Chicago mentioned in Paragraph (4) of this stipulation.

"(1) That since April 17, 1925 Coca-Cola Bottling Co. of Chicago, Inc. has been, and now is, a foreign corporation, duly licensed to do business within the state of Illinois . . .

"(2) That on the first day of July 1935, the . . . corporation was duly licensed under the laws of the State of Illinois to do business within that State; that ever since said date and continuously up to the present time, pursuant to said license and by virtue of the powers granted to it in its charter, the said Coca-Cola Bottling Co. of Chicago, Inc. has been engaged in the manufacture and distribution of Coca-Cola.

"(3) That Coca-Cola is a carbonated, non-vinous, non-malt and non-intoxicating beverage; and . . . is the only product manufactured and distributed by said . . . Bottling Co. . . .

"(4) That the manufacturing plants of the said . . . Bottling Co. of Chicago, Inc. are located at the following street addresses in the City of Chicago, to-wit: . . . that said manufacturing plants are duly licensed by the City of Chicago and are subject to the regulations of, and inspection by, the officers of the Department of Health of said City.

"(5) That Coca-Cola, the only beverage manufactured by said company, is manufactured by blending a syrup compound containing fruit juices with pure, filtered and carbonated water; that said blending is done entirely by machinery, and that neither the said syrup compound nor the carbonated water mixed therewith is touched by human hands during the course of manufacture; that when the beverage is blended it is placed in cleansed and sterilized glass bottles; that the said bottles are placed by hand in a washing and

sterilization machine, which then automatically cleanses and sterilizes each bottle and feeds the bottles so sterilized to the blending machine, where they are filled and hermetically sealed; the bottles so sealed are placed in cases, each case containing twenty-four bottles and each being of a distinctive character and bearing thereon the trade mark 'Coca-Cola'; that neither the bottles nor the beverages are handled in manufacture or in bottling, the only work done by hand being the placing of the bottles in the cleansing machine, and in the cases after they are sealed.

"(6) That said Coca-Cola Bottling Co. of Chicago, Inc. employs automobile trucks exclusively in distributing its said product; that said trucks have an open-deck body, especially designed to contain the Coca-Cola cases, so that no case is placed upon or over another; that said trucks are provided with curtains or shields of tarpaulin for use in inclement weather; that a photo of a typical Coca-Cola truck loaded with the cased beverage is attached to and made a part of this stipulation.

"(7) That the said . . . Bottling Co. . . . maintains offices and distributing centers in charge of regular employees in the following communities in Illinois: In the City of Joliet, an office and depot, employing seven persons; in the City of Waukegan, an office and depot, employing seven persons; in the City of Chicago Heights, an office and depot, employing eight persons; in the City of Elgin, an office and depot, employing eight persons; in the City of Aurora, an office and depot, employing seven persons; that each of said depots and offices was opened with a single employee, but the number of employees has been and is gradually increased as the business of the company expands; that said offices and distributing centers have been maintained since the beginning of the company's operation.

"(8) That the Coca-Cola manufactured and distributed by said . . . Bottling Co. . . . is sold only to retail dealers.

"(9) That said . . . Bottling Co. . . . employs salesmen, who call on retail dealers of soft drinks in the territory supplied by said company, which territory extends to points within the state of Illinois, located within approximately 50 miles of the City of Chicago; that said salesmen distribute advertising matter of the said company and try to induce retail dealers to purchase Coca-Cola from the said Company.

"(10) That said . . . Bottling Co. . . . in the development of its business has created and does now maintain routes to be covered by its delivery trucks, which routes depend largely on the location of the places of business of the regular customers of said company.

"(11) That one of the routes now maintained by said Coca-Cola Bottling Co. of Chicago, Inc. passes over, upon and along the streets of the City of Park Ridge, Cook County, Illinois.

"(12) That on June 7, 1939, there was in force in the City of Park Ridge, Illinois, an ordinance in words and figures as follows:

"'An Ordinance

"'Regulating the Vehicles Carrying Foodstuffs.

"'Be it ordained by the City Council of the City of Park Ridge, Cook County, Illinois:

"'Section 1. (License required.) It shall be unlawful to use or permit the use of any vehicle, including wagons and motor vehicles and vehicles propelled by human power, for the storage or carrying of any meats, poultry, fish, butter, cheese, lard, vegetables, bread or bakery products, or any other provisions intended for human consumption, including beverages and milk, in the City for the purpose of delivering

any such foodstuffs to any place in the City for use and consumption or for resale in the City for such purposes, unless a license for such vehicle is first secured and the provisions of this ordinance fully complied with.

" 'Application for such licenses shall be made to the City Clerk and shall state thereon the name and address of the owner thereof, the name or names of the persons from which such deliveries are made, and the nature of the goods carried. The Clerk shall issue such licenses, and shall give to the City Council a list of all of such licenses issued.

" 'The annual fee for such licenses shall be Ten Dollars and such license shall be for one year beginning on the first day of January of each calendar year. Such fees shall be paid to the City Clerk who shall turn them over to the City Treasurer forthwith.

" 'Section 2. (Exemption.) No license fee shall be required for any vehicle used to deliver foodstuffs from any establishment which is licensed and inspected as a food dealing establishment in the City; but all provisions of this ordinance shall be complied with in connection with such vehicles other than that providing for the payment of the fee.

" 'Section 3. (Regulations.) All such vehicles shall be kept in a clean and sanitary condition, and shall be thoroughly cleaned each day they are so used. It shall be unlawful to permit stale food, decaying matter or other waste material to accumulate in or on any such vehicle while it is so used.

" 'If unwrapped foodstuffs are transported in any such vehicle, such goods shall be carried in a portion of the vehicle which is screened and protected against dust and insects.

" 'Section 4. (Inspections.) It shall be the duty of the Mayor to make or cause to be made such inspections as may be necessary to insure compliance with the provisions of this ordinance.

" 'Section 5. (Penalty.) Any person, firm or corporation violating the provisions of this ordinance shall be fined not less than five dollars nor more than one hundred. dollars for each offense, and a separate offense shall be deemed committed on each day during or on which a violation occurs or continues. Any license granted under the provisions of this ordinance may be revoked by the Mayor for any violation of Section 3 hereof, and such revocation shall be in addition to any fine imposed by virtue of this section.

" 'Section 6. All ordinances or parts of ordinances in conflict herewith are hereby repealed.

" 'Section 7. (Time of taking effect.) This ordinance shall be in effect from and after its passage, approval and publication according to law.

" ' . . . '

"(13) That on said date, one of the automobile trucks delivering Coca-Cola was passing through the said City of Park Ridge under the control of a driver named J. Kussy and had delivered, or was about to deliver Coca-Cola in cases to various retail dealers in said City; that neither said driver . . . nor his employer, Coca-Cola Bottling Co. of Chicago, Inc., had a license as required by the terms of the ordinance hereinbefore in Paragraph 12 set forth; that the Coca-Cola Bottling Co. of Chicago, Inc., was not on June 7, 1939 licensed as a food dealing establishment in the City of Park Ridge; that the said automobile truck so being operated . . . was on said day delivering nothing but bottled Coca-Cola manufactured by his employer, Coca-Cola Bottling Co. of Chicago, Inc.; that said J. Kussy and employees of Coca-Cola Bottling Co. of Chicago, Inc. service in the City of Park Ridge a total of thirty-five (35) retail dealers; seventeen (17) of these dealers are in the grocery business; four (4) operate drug stores; four (4) operate cafes; two (2) operate fruit stores; five (5) operate filling stations; and one (1) operates a golf club; one (1) a confectionery store; and one (1) a bowling alley.

"(14) That before, at the time, and since, the adoption of the ordinance set forth in Paragraph (12), the City of Park Ridge maintained a police department consisting of eleven men, to-wit: one captain of police, one lieutenant of police, one sergeant of police, six policemen and two desk clerks; and that it was, and is the duty of said police department, among other things, to enforce all municipal ordinances; that the City of Park Ridge appropriates $30,000.00 annually for the operation and maintenance of the police department.

"(15) That the Mayor of the City of Park Ridge, with the approval of the City council, by virtue of the authority of municipal ordinances, appoints a city inspector whose duty it is to enforce the regulations and make the inspections of vehicles carrying foodstuffs, as provided in the ordinance set forth in Paragraph (12) and that the annual salary of the city inspector is $980.00; that a city physician is appointed by the Mayor with the approval of the City Council, whose duty it is to see to the enforcement of all ordinances relating to food or drink intended for human consumption and that the annual salary of the city physician is $300.00.

"(16) That beverage dealers and distributors other than the Coca-Cola Bottling Co. of Chicago, Inc., employ trucks to carry, distribute and deliver bottled beverages in the City of Park Ridge and that such trucks are of a varied construction, design and appearance."

In its original brief defendant states its position as follows: "Because the food product involved in this record, Coca-Cola, is delivered only in sterilized and hermetically sealed glass bottles; and because by reason of such fact there is no possibility of contamination of the product, sterilization involving the idea of freeing from germs and making the product pure, and hermetically sealed container involving the idea of a container which is impervious even to air; and because Coca-Cola . . . is produced under complete

regulation and under the supervision of the Department of Health of the largest city of this State; and because that Health Department likewise inspects the vehicles used in carrying Coca-Cola; and because, in addition thereto, the City of Park Ridge has ordinances, which, by regulating and licensing their retail dealers, who distribute Coca-Cola, protect the health of their citizens purchasing food products for all these reasons, it must be manifest that any attempt to include the delivery trucks of the Coca-Cola Bottling Co. of Chicago, Inc., within the terms of the ordinance here in question, is unreasonable and unfair.'' In its reply brief defendant concedes that the ordinance is a valid one ''and properly applicable to vehicles which are used to transport foodstuffs that are subject to contamination during delivery,'' but defendant contends that ''it should be held on the facts shown by this record that the ordinance of Park Ridge should not be applied to vehicles which deliver only one product, and that product in sterilized and hermetically sealed containers.'' In its reply brief defendant also states: ''We argued in our brief that while it might be true that the Coca-Cola Co. vehicles were within the letter of the Park Ridge ordinance, it was clear from the facts in this record that those vehicles were not within the spirit of the ordinance and that to subject them to inspection for the purpose sought by the ordinance would be unreasonable;'' that ''the ordinance of Park Ridge should not be so construed as to include within its terms the delivery trucks of a manufacturer who ships his product in sterilized and hermetically sealed containers. In such a case there is no necessity for inspection of the vehicle because the condition of the vehicle can have no ill effect upon the food product incased in the sterile and impervious container.''

Defendant concedes that it was held in *American Baking Co. v. Wilmington,* 370 Ill. 400, that the ordinance in question is a valid one, but defendant calls

attention to the fact that the point it is making was not raised by the appellants in the *Wilmington* case. It does appear, however, from the opinion of the court, that the plaintiffs in that case alleged in their complaint that they were "engaged in the business of distributing foodstuffs at wholesale to various cities, including the city of Wilmington, and their residence and principal places of business are outside the city of Wilmington; that trucks are used to make such deliveries, all of which trucks were duly licensed by the State of Illinois and by the city of Joliet; that all of the vehicles of plaintiffs have been duly inspected and their sanitary conditions ascertained by local authorities of the place of residence or principal place of business of each of the plaintiffs; that the trucks and vehicles are operated under sanitary conditions and that the articles contained therein are in a clean, healthy condition and wrapped in sealed containers; that the products of plaintiffs are duly inspected, and the source of supply thereof inspected in compliance with all of the pure food laws of the State of Illinois and of the Federal government." We think it is quite likely that the aforesaid point was not argued in the Supreme Court because of the decision in *City of Chicago v. Arbuckle Bros.*, 344 Ill. 597. We will hereafter refer to that case.

Defendant contends that the point it makes has authority to support it. We will briefly refer to the cases cited:

*City of Chicago v. Chicago & N. W. Ry. Co.*, 275 Ill. 30, was a suit brought against the Railway Company for a violation of the city ordinance regulating the production, transportation and sale of milk. The section of the ordinance upon which the prosecution of the case was based reads: "It shall be unlawful for any person, firm or corporation to transport into the city of Chicago, or to transport or deliver from point to point within the city, milk, cream, skim milk or but-

termilk for human consumption which is of a higher temperature than 60 degrees Fahrenheit, provided that after June 1, 1914, it shall be unlawful for any person, firm or corporation to transport into the city of Chicago, or to transport from point to point within the city, or to deliver, any milk, cream, skim milk or buttermilk for human consumption which is of a temperature higher than 55 degrees Fahrenheit.'' The Supreme Court held that *under the record in the case* it was impossible to tell what practical regulations should be included in an ordinance in reference to the transportation of milk by common carriers from the various shipping points to the city of Chicago; that the ordinance, *under the record,* imposed conditions that the Railroad Company could not possibly comply with. But the Supreme Court stated that the question as to whether or not the requirements were reasonable was not properly covered in the trial court, and reversed the judgment, but *remanded* the cause in order to give the City an opportunity to present proof upon the question as to whether or not the requirements of the ordinance were reasonable. That case has no application to defendant's point in the instant case.

*City of Chicago v. Arbuckle Bros., supra,* cited by defendant, in our opinion not only does not aid defendant's contention but the reasoning of the court is adverse to it. There the defendant was convicted of conducting a wholesale food establishment without a license in violation of section 2004 of the Chicago municipal code. The ordinance provides for sanitary regulations of wholesale food establishments. To quote from the opinion of the Supreme Court (p. 600) : ''The plaintiff in error is engaged in the business of receiving, packing and selling at wholesale, coffees, teas, spices and flavoring extracts. The coffee is received in bulk and is then roasted and ground and packed in containers by machinery. Most of the teas are kept and sold in their original containers, though some teas

are picked over and repacked. All spices are handled automatically, without the intervention of human hands, except that an original package of allspice will be broken when someone wants a smaller quantity, and whole spices are handled occasionally. The flavoring extracts are also manufactured without the intervention of human hands. The products of the plaintiff in error are distributed in all the States east of the Rocky Mountains. The business of the plaintiff in error subjects it to the provisions of the act 'to prevent the preparation, manufacture, packing, storing, or distributing of food intended for sale, or sale of food, under insanitary, unhealthful or unclean conditions or surroundings, to create a sanitary inspection, to declare that such conditions shall constitute a nuisance, and to provide for the enforcement thereof,' approved June 5, 1911. (Laws of 1911, p. 528.)'' The court further said (pp. 604, 605): ''If there is a reasonable connection between any business or occupation and danger to the public a reasonable ground for regulation is presented. Insanitary conditions in the production, keeping, handling and sale of food may result in unwholesome food and affect the health of the persons who purchase it. The probability of the existence of these conditions renders the business of the sale of food a proper one for municipal regulation, and the city council is the judge of the expediency of regulation. . . . It is argued on behalf of the plaintiff in error that if there is any question of public health connected with the distribution of the articles dealt in by it the question is very remote; that most of the operations involved in the preparation of its products are accomplished through the use of automatic machinery; and furthermore, that teas and coffees, before consumption, are prepared with boiling water in the home and spices and flavoring extracts are used sparingly in cooking. However remote the question may be, whether it exists and the degree of

its importance are for the determination of the city council, and while its determination is not final, it will not be set aside if there is any reasonable relation between the action of the council and the public health. . . . It may be that the plaintiff in error has never violated the terms of the ordinance in regard to the conditions under which its business must be conducted. It is not charged with any such violation. The sole charge against it is that it operated a wholesale food establishment without obtaining a license. The duty of obtaining a license applies equally to those who violate the terms of the ordinance and those who do not. All are required to have a license, and it is no defense to a charge of carrying on the business without having a license that the business was conducted strictly according to the terms of the ordinance.''

In *City of Mt. Vernon v. Julian,* 369 Ill. 447, the court held that a comprehensive Sunday closing ordinance purporting to make it unlawful to keep any place of business open on Sunday with certain enumerated exceptions, is invalid as being arbitrary and discriminatory and not a proper exercise of the police power where it operates to prohibit the keeping open of a community or neighborhood grocery store, while other businesses, having no greater connection with the public welfare, but being among the enumerated exceptions, are allowed to be kept open.

In *City of Chicago v. Netcher,* 183 Ill. 104, the defendant conducted a department store and was convicted for the violation of two ordinances of the City. The cases were tried on an agreed statement of facts before the court without a jury. The court held both ordinances void and found the defendant not guilty. The Supreme Court sustained the trial court. As to one of the ordinances, making it unlawful for any person, firm or corporation engaged in selling ''dry goods, clothing, jewelry, and drugs . . . to have exposed for sale, or sell to any person, firm or corporation, any meats, fish, butter, cheese, lard, vegetables or any

other provisions," the Supreme Court held that such ordinance was not a regulation but a purely arbitrary prohibition and void as an interference with property rights guaranteed by the State and Federal constitutions. As to the second ordinance, which forbad any person, firm or corporation to expose for sale or sell any intoxicating, malt or fermented liquor in any place of business where dry goods, clothing, jewelry or hardware are sold, the Supreme Court held that such ordinance was unreasonable and void as to one who has complied with the license regulations, and who sells liquor in sealed packages only and not for consumption on the premises, since such restriction was arbitrary and did not tend to protect public welfare.

The ordinance involved in the instant case was declared valid in *American Baking Co. v. Wilmington, supra*. None of the cases cited by defendant supports its contention that because it uses clean, sanitary trucks and the beverage, Coca-Cola, is delivered to retailers in cases containing sterilized and hermetically sealed glass bottles, the ordinance in question should not be applied to its delivery vehicles. The fact that at the present time it handles its product in a sanitary manner does not exempt it from the license fee, nor does it make the ordinance invalid as to it. As plaintiff strenuously argues, if defendant's point were sustained then the City could exact licenses only of such owners as allowed their trucks to become unclean and unsanitary.

In a final plea defendant states: "Although the license fee in the instant case may appear to be trifling, it becomes plain, when we consider the facts in this record, that a very serious situation is faced. If municipal corporations in this State are to be given power to inspect vehicles which deliver only hermetically sealed and sterilized containers, it becomes apparent that a very obnoxious trade barrier can be erected within the metropolitan district of Chicago. There are upwards of 85 municipal corporations in

Cook County alone, and if each of those communities has power to enact such an ordinance it becomes readily apparent that they are in a position to put a very effective clog on business throughout the State of Illinois. Such a condition should not be tolerated. No community in Illinois can be self-sufficient and altogether self-contained. Each must buy and use products manufactured in other cities and even in other states. Where adequate safeguards and inspections are provided in the manufacturing center, they should satisfy the residents of adjoining communities. Any license laid upon a manufacturer under such circumstances is manifestly laid as a tax and not a reasonable, fair inspection fee." The ordinance, as we have already stated, has been held valid by the Supreme Court, and it is not our province to pass upon the wisdom of it. *Ferguson Coal Co. v. Thompson*, 343 Ill. 20, 27, states: "Where an ordinance is within the grant of power conferred upon municipalities the presumption is that it is reasonable. (*McCray v. City of Chicago*, 292 Ill. 60.) In order to justify a court in interfering on the ground that an ordinance is unreasonable the proof must be clear and strong, and the action of the city council is final if there is room for reasonable difference of opinion upon the question. (*Dorwart v. City of Jacksonville*, 333 Ill. 143.) A court will not hold an ordinance void and unreasonable if there is room for a fair difference of opinion upon the question, though the correctness of the legislative judgment may be doubtful and the court may regard the ordinance as not the best which might be adopted for the purpose. *Melton v. City of Paris*, 333 Ill. 190."

After giving careful consideration to the points made by defendant, we have reached the conclusion that the judgment of the circuit court of Cook county must be affirmed and it is so ordered.

*Judgment affirmed.*

FRIEND, P. J., and JOHN J. SULLIVAN, J., concur.