(No. 37337.—

VINCENT REZLER, Appellant, *vs.* THE VILLAGE OF RIVER-SIDE, Appellee.

*Opinion filed May 27, 1963.*

Frank Wesolowski, Jr., of Glen Ellyn, for appellant.

Tenney, Sherman, Bentley & Guthrie, of Chicago, (S. Ashley Guthrie, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The Village of Riverside refused to renew the license of the plaintiff, Vincent Rezler, for the operation of a trailer camp, and he brought this action to restrain the enforcement of the licensing ordinance. The village counterclaimed to enjoin the continued operation of the plaintiff's trailer camp. On cross motions for summary judgment, the superior court of Cook County denied the relief sought by the plaintiff and entered a decree for the village as prayed in its counterclaim. The plaintiff appeals to this court upon the trial judge's certificate that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal. Ill. Rev. Stat. 1961, chap. 110, par. 75.

In 1942 the village enacted an ordinance regulating trailer camps which requires an annual license and fixes standards for the layout and operation of licensed camps. It imposes minimum area requirements and spacing distances for trailers, accessory buildings and driveways, and requires specified equipment to eliminate fire hazards. Two provisions, under attack here, concern the use of trailers for more than transient and temporary abode. They are: "(b) No person, except the owner or caretaker, his family and bona fide employees, shall remain or live in any trailer camp or camps in this village for more than two consecutive days or for more than thirty days in the aggregate during any twelve-month period. * * * (d) No person shall remove the wheels or other transporting device from any house-car trailer or otherwise fix said trailer permanently to the ground so as to prevent ready removal of said house-car trailer unless a permit to do so is obtained from the Village Manager. Any such alteration shall be construed as converting the house-car trailer into a residence building subject to the requirements of the zoning, building, and other ordinances of this Village relative to construction,

use and occupancy of such building and the lot or plot of ground where located."

In 1946 the plaintiff acquired a lot in an area of the village zoned for business use, on which he has since operated a trailer camp accommodating nine trailers. It is undisputed that his operations, both before and after April 30, 1955, when the village refused to renew his license, violated the terms of the ordinance. His tenants have remained in occupancy for periods ranging up to seven years; in three spot checks made at two-year intervals, the average period of occupancy for the nine tenants exceeded twenty months. The tenants have generally removed the wheels from their trailers and have placed some sort of support under the corners of their trailers. The trial court in its decree found that the trailers were jacked up on blocks and fixed firmly on the ground. It is admitted that the building and zoning codes applicable to residence buildings, and made applicable by the ordinance to trailers with wheels removed, or otherwise permanently fixed to the ground, are not complied with in the plaintiff's operations.

In 1952, the trailer camp ordinance was amended by the addition of a new section, which forbade the licensing of any new trailer camps not then in operation, and provided that no trailer camp, whether previously established or not, could be operated or licensed after the expiration of a three-year period that ended on April 30, 1955. The plaintiff obtained the required village license annually from the time he began operations in 1946 until April 30, 1955, when his application for renewal was denied. He then brought this action to invalidate the ordinances and to enjoin their enforcement.

When the trailer camp ordinance was adopted in 1942, the legislature had not, in express terms, delegated to municipalities the power to regulate trailer camps. Under its delegated police power, however, the village had authority

to regulate any occupation or business, the unrestrained pursuit of which might injuriously affect the health of its citizens or subject them to danger from fire or disease. (*Father Basil's Lodge, Inc.* v. *City of Chicago,* 393 Ill. 246.) In this court the plaintiff concedes that the power to regulate and license trailer camps falls within the broad scope of this delegation. In 1953 the legislature expressly conferred upon municipalities the power to "locate and regulate the use and construction of * * * camps accommodating persons in house trailers, house cars, cabins or tents, * * *." Ill. Rev. Stat. 1953, chap. 24, par. 23—87; Ill. Rev. Stat. 1961, chap. 24, par. 11—42—8.

In 1953 the General Assembly also enacted a statute providing for the licensing of trailer parks by the State through the Department of Public Health. (Ill. Rev. Stat. 1953, chap. 111½, pars. 158-185.) The plaintiff first argues that the effect of this statute was to invalidate the 1952 amendment to the village ordinance which prohibited the operation of trailer camps after the lapse of the specified three-year period. We do not find it necessary to consider this contention, however, because, even if the prohibitory amendment of 1952 is invalid, the original regulatory provisions of the ordinance remain in effect.

The plaintiff next contends that the enactment of the statute providing for licensing by the Department of Public Health superseded the authority of municipalities to regulate trailer camps. But the statute providing for regulation by the State was enacted at the same legislative session in which municipal power to regulate trailer camps was expressly recognized, and no justification is suggested for supposing that one act should cancel the other. On the contrary, the legislature expressly declared that the issuance of a permit by the State for the construction of a trailer park "does not relieve the applicant from securing building permits in municipalities or counties having a building code, or from complying with any mu-

nicipal or county zoning or other ordinance applicable thereto." (Ill. Rev. Stat. 1953, chap. 111½, par. 168.) Moreover, the statute provides that the requirement of a State license "shall not apply in any county, city, village or unincorporated town which provides for the licensing and regulation of trailer parks," so long as the statutory requirements "as to location, construction, layout, sanitation, operation and maintenance are met as a minimum, * * *. The fact of such non-application shall be evidenced by a certificate of exemption" issued by the Department of Health. Ill. Rev. Stat. 1953, chap. 111½, par. 185.

The plaintiff asserts that no such certificate of exemption has been issued to the village of Riverside, and he argues that the village's ordinance is therefore unenforceable. It is clear that the statute was not enacted to supplant municipal regulation, but rather to fill the breach where no municipal regulation applies. Where there is local regulation, the statute requires compliance with whichever standards, State or municipal, are higher, and it dispenses entirely with State licensing where the minimum standards fixed by the statute are met or exceeded by local regulations. A certificate of exemption evidences the non-applicability of the statute, but the fact of non-applicability may be established by other proof. Concurrent exercise of police powers by the State and its municipalities is not novel. (*Aliotta* v. *City of Chicago,* 389 Ill. 418; *Dean Milk Co.* v. *City of Chicago,* 385 Ill. 565.) We conclude, therefore, that the enactment of the statute providing for State regulation of the parking of trailer coaches did not preclude municipal regulation. (*Town of Cicero* v. *Weillander,* 35 Ill. App. 2d 456; *Walter Rogers, Inc.* v. *Mortimer,* 19 Ill. App. 2d 381.) The fact that the plaintiff holds a license from the State thus does not excuse him from the duty to comply with the village ordinances.

The plaintiff also argues that the regulatory ordinance

is unreasonable because it limits the length of stay in a trailer camp, and prohibits removal of wheels. The modern trailer or mobile home, both vehicle and residence, does not fit neatly into conventional categories of land use. See Hodes and Roberson, *The Law of Mobile Homes*, 1—7 (1957). Some municipalities have regarded the trailer as less than a dwelling and have excluded it from residence zones. (*Napierkowski* v. *Township of Gloucester*, 29 N.J. 481, 150 A.2d 481 (1959); *Jensen's Inc.* v. *Town of Plainville*, 146 Conn. 311, 150 A. 2d 297 (1959); *Town of Manchester* v. *Phillips*, (Mass. 1962) 180 N.E.2d 333.) Others have viewed the trailer as a residence and have required compliance with the standards laid down for other dwellings as to lot area, (*County of Will* v. *Stanfill*, 7 Ill. App.2d 52; *Commonwealth* v. *Helmuth*, 73 Pa. D. & C. 370 (1949),) and as to minimum floor area. (*Kimsey* v. *City of Rome*, 84 Ga. App. 671, 67 S.E.2d 206 (1951); *Corning* v. *Town of Ontario*, 204 Misc. 38, 121 N.Y.S. 2d 288 (1953).) The necessity for special treatment of trailer parks, partaking both of commercial and residential use, has been universally recognized. *Camboni's, Inc.* v. *County of Du Page*, 26 Ill.2d 427; *Town of Granby* v. *Landry*, 341 Mass. 443, 170 N.E.2d 364 (1960).

In dealing with these problems the village of Riverside has chosen to recognize the special character of trailers and has exempted them, when transient and temporarily located in trailer parks, from the requirements imposed on conventional residence buildings. The exception is strictly confined, however. So that the regulations generally applicable to dwellings are not evaded, the ordinance limits the period of occupancy to not more than two consecutive days or more than thirty days per year. The ordinance treats removal of the wheels or permanent attachment of the trailer to the ground as a conversion of the trailer into an ordinary residence building, which must comply with applicable building and zoning codes. The State statute

demonstrates a similar purpose to guard against the use of trailers as permanent dwellings. It provides that it does not apply to vehicles "resting in whole on a permanent foundation, with wheels, tongue and hitch permanently removed." Ill. Rev. Stat. 1961, chap. 111½, par. 159.

Such an approach to the treatment of trailers has been accepted as reasonable and valid. In *Gillam* v. *Board of Health of Saugus,* 327 Mass. 621, 100 N.E.2d 687 (1951), the ordinance prohibited occupancy of a trailer for more than 90 days in any six months. Renewal of the plaintiff's license to operate a trailer park was denied when it was conceded that the prohibition had been violated. The court stated: "The rule in question cannot be pronounced lacking in rational purpose. In other States similar rules have been held valid, as tending to prevent permanent occupation of dwelling places which do not conform to the requirements of building codes." (327 Mass. at 623, 100 N.E.2d at 688.) In *Town of Hartland* v. *Jensen's, Inc.,* 146 Conn. 697, 155 A. 2d 754 (1959), a prohibition against occupancy of a trailer for more than five days without a permit, or for a total of more than sixty days, was sustained as reasonable since the "obvious purpose of the time limitation is to prevent either a trailer or a mobile home from becoming a permanent habitation in the town." In *Lower Merion Twp.* v. *Gallup,* 158 Pa. Super. 572, 46 A. 2d 35 (1946), an ordinance was sustained which provided, "If a house trailer is used for living or sleeping purposes within the township for an aggregate of more than thirty days in any period of one year, it shall be considered as a single family dwelling for all purposes of this ordinance." See also *Spitler* v. *Town of Munster,* 214 Ind. 75, 14 N.E.2d 579 (1938); *Stary* v. *City of Brooklyn,* 162 Ohio St. 120, 121 N.E.2d 11 (1954); *Renker* v. *Village of Brooklyn,* 139 Ohio St. 484, 40 N.E.2d 925 (1942); *Town of Southport* v. *Ross,* 284 App. Div. 598, 132 N.Y.S. 2d 390 (1954).

In the plaintiff's operation of his trailer park, the trailer

wheels were generally removed and some sort of fixed support for the trailer was substituted. His standing to attack the reasonableness of the 2-day occupancy limitation is therefor dubious. (See *City of Elmhurst* v. *Buettgen,* 394 Ill. 248, 254.) The plaintiff urges that wheels can be quickly replaced, in less time than is required for dismantling electrical and plumbing connections. The wisdom of the legislation, however, is not a judicial question. A regulatory ordinance enjoys a presumption of validity which may be overcome only by a showing that the legislative judgment is arbitrary and unsupported by reason. (*Reitman* v. *Village of River Forest,* 9 Ill.2d 448; *First National Bank of Lake Forest* v. *County of Lake,* 7 Ill.2d 213.) Electrical and plumbing connections are necessary and appropriate to occupancy even for a brief period. Removal of wheels, on the other hand, is not required for occupancy, and we can not hold it unreasonable to view their removal as signifying a use of the trailer that is more than transient and temporary. *Lower Merion Twp.* v. *Gallup,* 158 Pa. Super. 572, 46 A. 2d 35 (1946).

Moreover, the trailers in plaintiff's park were customarily occupied for periods extending into years. A legislative body may conclude without arbitrariness that conditions which are adequate for brief occupancy, in terms of health, safety and sanitation, may be inadequate when persons are subjected to those conditions for an extended time. The responsibility of the municipality is inevitably enlarged as the period of occupancy lengthens. As the occupants approach the status of village residents, their health, education, and welfare increasingly become village concerns.

Here the trailers were occupied and used in the same manner as conventional dwellings. It is neither inherently unreasonable nor arbitrary to class trailers with other habitations serving the same function. We have upheld minimum lot areas for conventional residences as a valid

exercise of the police power. (*Reitman* v. *Village of River Forest,* 9 Ill.2d 448; *Galpin* v. *Village of River Forest,* 26 Ill.2d 515.) It is admitted that the plaintiff's trailer park does not conform to the minimums of area, and of front, side, and rear yards which apply to other dwellings. No constitutional provision requires that trailers, when used as permanent dwellings, be placed in a privileged class, exempt from requirements generally imposed.

In view of the admitted and substantial violations of the ordinance, the village could properly refuse to issue the plaintiff a license for the future. (*Gillam* v. *Board of Health of Saugus,* 327 Mass. 621, 100 N.E.2d 687 (1951); *Michaels* v. *Township Committee of Pemberton Twp.* 3 N.J. Super. 523, 67 A. 2d 324 (1949).) Conduct under a prior license may serve as grounds for denying a license for the future. (*Carpentier* v. *Goers,* 23 Ill.2d 246.) It was proper, therefore, to enjoin the plaintiff from operating without a license and in violation of the building and zoning codes. Ill. Rev. Stat. 1961, chap. 24, par. 11—13—15.

The decree of the superior court of Cook County is affirmed.

*Decree affirmed.*