THE VILLAGE OF CARPENTERSVILLE, Plaintiff-Appellant, *v.* JOSEPH R. FIALA, Defendant-Appellee.

Second District    No. 80-853

Opinion filed August 5, 1981.

Richard W. Husted, of Elgin, for appellant.

Allen G. Skjoldagger, of Elgin, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Joseph R. Fiala, was charged by a complaint filed in the circuit court of Kane County with the violation of section 15—23 of the Village Code of Carpentersville, in that he kept more than two adult dogs in or about his single-family residence. A hearing was held at which time two of the defendant's neighbors testified, one stating that the defendant was maintaining 15 large red dogs, which he believed to be Irish setters, on his single-family premises. The other neighbor testified there were a large number of dogs maintained on defendant's premises, but he did not name any specific numbers. The defendant pleaded not guilty and admitted that there were more than two dogs on his premises, but that there were less than 15. It was also established that the premises in question were on a 60-foot by 100-foot lot, abutted by residences on similar-sized lots on both sides and to the rear. The court *sua sponte* found that the complaint should be dismissed, noting that it had held the ordinance unconstitutional two years before in a similar case. Plaintiff, the Village of Carpentersville (hereafter Village) appeals, contending that the trial court erred in finding the ordinance to be unconstitutional. We reverse.

The ordinance in question, section 15—23 of the Village Code provides:

> "No person shall permit more than two dogs to be or remain in or about any single-family residence, building or lot, or more than one dog in any single-family unit in any multiple housing building within the Village under his control at any one time. This section applies only to dogs required to be licensed under this Article or to dogs over the age of three months."

The Village argues the court improperly dismissed the cause, citing *People v. Warren* (1957), 11 Ill. 2d 420, for the proposition that the only limitation upon the legislature in the exercise of its police power is that the statute must reasonably tend to correct some evil or to promote some interest of the State (or municipality) and not violate some positive mandate of the constitution. It points out that the interests implicitly

promoted by the ordinance are the health, comfort and welfare of the public. It further argues that the legislative classification of dog owners by type of dwelling unit does not offend the concept of equal protection since the classifications are reasonably related to the purpose of the ordinance and are founded upon a real and substantial difference in situation. The Village asserts that single-family residences with front, side and rear yards can accommodate more dogs than a unit without those facilities in a multiple housing building, and that the ordinance is entitled to a presumption of constitutional validity which may be overcome by the challenging party only by clear and convincing evidence. (*Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 591; *City of Park Ridge v. Kussy* (1940), 307 Ill. App. 324, 338.) Additionally, the power to protect the health and safety of the community is generally considered to be the most important police power possessed by a municipality. *City of Des Plaines v. Gacs* (1978), 65 Ill. App. 3d 44, 47.

The defendant characterizes the ordinance as a zoning ordinance in that it prohibits the use of personal property (dogs) by class of real property usage, and contends that this classification is arbitrary, capricious and a denial of equal protection of the law. The defendant further contends the ordinance is invalid because there are no statutes which authorize or which evidence the legislative intent of the State of Illinois to regulate dogs. Defendant asserts that dogs are "compatible with any residential use of property" and, therefore, would not be subject to prohibition by the Village in a residential zone. Lastly, defendant urges that in the absence of any evidence of the existence of a nuisance, the ownership of dogs is a wholesome and useful activity and the ordinance in question bears no real or substantial relation to the health, safety or general welfare of the citizens of Carpentersville.

Contrary to defendant's assertion, there is ample statutory authority for the enactment of the ordinance in question. Under the Illinois Municipal Code, a municipality may enact any ordinance that it deems necessary for the promotion of health or the suppression of diseases. (Ill. Rev. Stat. 1979, ch. 24, pars. 1—2—1, 11—20—5.) A municipality may also "pass and enforce all necessary police ordinances" (Ill. Rev. Stat. 1979, ch. 24, par. 11—1—1), and may "define, prevent, and abate nuisances." (Ill. Rev. Stat. 1979, ch. 24, par. 11—60—2.) As set forth in 7 McQuillin, Municipal Corporations §24.284 (3d ed. 1981):

> "[T]he keeping of dogs may be a public nuisance by reason of their howling, barking and whining, the stench they cause, unsanitary conditions in which they are kept, or their disturbing of people in the reasonable use and enjoyment of property, where any of these factors cause annoyance, discomfort or injury to the health or welfare of persons. An ordinance may limit the number of dogs that may be kept * * *."

There is, therefore, adequate statutory authority to support the enactment of this ordinance by the Village.

We next consider whether the classifications contained in the ordinance are violative of equal protection. We note here that the defendant's characterization of the ordinance purely as a zoning ordinance is without merit. Although zoning is one of the police powers which may be exercised by a municipality, during oral argument before this court, it was established that the ordinance was part of the animal control ordinance of the Village which, *inter alia*, includes a leash law and regulates the keeping of large animals and reptiles. The limitation of dog ownership by reference to types of residences creates legislative classifications which must withstand equal protection scrutiny in order for the ordinance to be upheld as a valid exercise of the police power.

■■■ Because the classifications here are neither "suspect classifications" (*e.g.*, sex, race, alienage, or national origin (*Frontiero v. Richardson* (1973), 411 U.S. 677, 687, 36 L. Ed. 2d 583, 592, 93 S. Ct. 1764, 1770)), nor do they involve "fundamental interests" (*e.g.*, the right to travel freely or to practice a religion (*Anderson v. Wagner* (1978), 61 Ill. App. 3d 822)), the "rational basis" test is applicable. (*Melbourne Corp. v. City of Chicago* (1979), 76 Ill. App. 3d 595, 607.) Classifications, in order to be constitutional in the sense of equal protection, must be based on some real and substantial difference in persons and bear a rational relation to the purposes of the statute. (*Kane v. Board of Governors* (1976), 43 Ill. App. 3d 315, 320.) To be a valid exercise of police power, the legislation must bear a reasonable relationship to the public health, safety, morals, general welfare or convenience, and the means adopted must constitute a reasonable method to accomplish such objectives. (*Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill. 2d 323, 327.) The privilege of the individual to use property freely is subject always to a legitimate exercise of the police power under which new burdens and restrictions may be imposed when the public welfare demands. *Petterson v. City of Naperville* (1956), 9 Ill. 2d 233, 244.

■■ As clearly provided in section 11—60—2 (Ill. Rev. Stat. 1979, ch. 24, par. 11—60—2), a municipality has not only the power to define and abate nuisances, but to *prevent* them as well. As such, its police power is not limited to the regulation of such things as have already become nuisances, but extends to the regulation of those things which may become a nuisance. (See *Dube v. City of Chicago* (1955), 7 Ill. 2d 313, 325.) Although not true in every instance, single-family units in multiple-housing buildings tend to be smaller, less soundproof and more densely concentrated in terms of area than single-family residences. Single-family residences are characteristically owned by the persons residing therein, whereas units in multiple-housing buildings are generally rented by occupants who may have somewhat of a less compelling interest in the

use and upkeep of the premises than an owner might. Although decided in the context of taxation and the Homestead Exemption Act, the Illinois Supreme Court has held that there are, in fact, real and substantial differences between owners of a fee and a tenant under a lease. (*International Business Machines Corp. v. Korshak* (1966), 34 Ill. 2d 595; *Doran v. Cullerton* (1972), 51 Ill. 2d 553, 560.) Furthermore, although a classification may serve for some purposes, it may furnish no reason whatever for classification for other purposes.

> "A city, under its police power to provide for the protection of the health, lives and safety of its inhabitants, may enact legislation affecting only one particular class of inhabitants, and such classification is not discriminatory if there is some fair reason for the application of the law to the class affected which does not also require with equal force its application to others whom it leaves untouched." *Father Basil's Lodge, Inc. v. City of Chicago* (1946), 393 Ill. 246, 259.

With regard to the keeping of dogs, we believe there are real and substantial differences between single-family residences and single-family units within multiple-housing buildings. These differences include, but are not limited to, considerations of indoor and outdoor space, density and proximity to others, noise levels, and structural differences. The evident purpose of the ordinance is to promote interests of health, safety, general welfare and comfort with an ounce of prevention rather than a pound of cure. The allowance of two dogs in more open, separated living areas (single-family residences) and fewer than two dogs in more congested, densely concentrated living areas (single-family units in multiple-housing buildings) is a difference which is rationally related to the object of the ordinance, and the classifications are therefore valid and not violative of equal protection.

■■ From a review of the record, we must conclude that the defendant has not established that the ordinance constitutes arbitrary, capricious or unreasonable municipal action. The Village could reasonably anticipate that a limitation on the number of dogs which may be maintained was necessary for the protection of the health and safety of the community, and the classification scheme designed to accomplish that purpose is reasonably related thereto. Therefore, the trial court erred in finding the ordinance to be unconstitutional.

For the foregoing reasons, the judgment of the circuit court of Kane County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

REINHARD and VAN DEUSEN, JJ., concur.