CLOVIS BEEDING, Plaintiff and Counterdefendant-Appellant and Cross-Appellee, v. THOMAS K. MILLER, Defendant and Counterplaintiff-Appellee and Cross-Appellant.

Second District No. 2—87—0899

Opinion filed March 1, 1988.—Rehearing denied April 7, 1988.

Reese & Reese, of Rockford (Bernard P. Reese, Jr., of counsel), for appellant.

Donald L. Shriver, of Downey, Yalden, Shriver & Yalden, of Rockford (M. Allyson Misevich, of counsel), for appellee.

JUSTICE INGLIS delivered the opinion of the court:

This action was brought by the owner of a mobile home park to evict the owner of a mobile home from property leased in that park. Defendant filed a counterclaim against plaintiff and third-party complaint against plaintiff's wife. The trial court held in favor of defendant on plaintiff's complaint and in favor of plaintiff and third-party defendant on defendant's counterclaim. Plaintiff appeals challenging the trial court's interpretation of section 8 of the Mobile Home Landlord and Tenant Rights Act (Act) (Ill. Rev. Stat. 1985, ch. 80, par. 208), the constitutionality of that section as interpreted, and the court's finding on the facts presented. Defendant cross-appeals challenging the sufficiency of the evidentiary hearing held by the trial court on defendant's

counterclaim. We affirm.

Plaintiff, Clovis Beeding, is the owner and operator of the Maple Leaf Mobile Home Park located in Loves Park, Illinois. Defendant, Thomas Miller, is the owner of a mobile home located on lot 38 of the mobile home park. Defendant leases that site from plaintiff pursuant to a written lease executed between the parties on July 29, 1981. The lease term is for one year and is renewed automatically unless either party provides the other with adequate notice of their intent not to renew. On June 8, 1985, defendant received notice from plaintiff that his lease of the mobile home lot would not be renewed at the end of the term. Pursuant to section 8 of the Act, a landlord's notice of intent not to renew must state the reasons for nonrenewal, such as nonpayment of rent, violation of the law, or violation of the park rules. (Ill. Rev. Stat. 1985, ch. 80, par. 208.) Plaintiff's reasons for nonrenewal were stated as follows:

"1. Continual violation of park rules. Specifically, paragraph 9, in that the yards have not been kept neat and clean.

2. In violation of paragraph 12 of the park rules and regulations, disposal of garbage has created a health hazard which situation endangers the other tenants in the park."

Defendant was provided with a copy of the park rules and regulations at the time he signed the lease. Paragraph 9 of the park rules and regulations provides, *inter alia*, that the tenant keep his lot neat and lawn clean and mowed. Paragraph 12 regulates the disposal of trash and garbage, specifically describing the type of garbage containers required, pickup times, and further prohibiting storage of the containers in front of the mobile home.

Despite receiving the notice of nonrenewal, defendant did not vacate the premises at the expiration of the lease term ending July 29, 1985. Instead, defendant attempted to continue making monthly rent payments. Payments attempted after July 29, 1985, were refused.

On August 20, 1985, plaintiff filed this action seeking possession of lot 38. This is plaintiff's third judicial attempt to regain possession of lot 38. Plaintiff's first attempt was dismissed for failure to comply with notice time provisions. Plaintiff's second attempt ended in a decision for defendant because plaintiff failed to show that defendant had notice of the park rules and regulations. In the instant action, defendant filed his answer denying the allegations in the notice of nonrenewal and raising affirmative defenses. Defendant also filed a counterclaim against plaintiff and third-party complaint against plaintiff's wife, Dorothy Beeding, alleging numerous violations of statutes and local ordinances and seeking injunctive and compensatory relief.

Defendant later filed an amendment to his counterclaim and third-party complaint adding a second count and alleging that the Beedings were engaged in deceptive practices in violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*). Count II also sought injunctive and compensatory relief.

The trial court held a hearing at which time plaintiff introduced evidence on the reasons for nonrenewal of the lease and defendant presented rebuttal evidence and evidence on the counterclaim. Essentially, the trial consisted of both sides calling neighbors to the witness stand to testify regarding the condition of defendant's lot. These witnesses gave conflicting accounts regarding the upkeep of defendant's lot, particularly with respect to the length of the grass and weeds around defendant's mobile home. With regard to defendant's disposal of garbage, one witness did testify vaguely on that point, but did not state what she found objectionable about it. She did state that defendant occasionally left empty oil cans in his front yard; however, this was not corroborated. A second witness objected to defendant storing his garbage containers on his back porch as opposed to in a storage shed. Other witnesses testified that there was nothing objectionable about the manner in which defendant disposed of his garbage.

The court also heard from an inspector of the Illinois Department of Health who stated that none of the violations alleged in defendant's counterclaim existed on the occasions he inspected the mobile home park for license eligibility. Also, an investigator for the Loves Park Planning and Zoning Department testified that he was currently investigating allegations of nonconforming uses in the mobile home park.

Defendant rested following the presentation of his evidence, and counsel for the parties were given an opportunity to make summations. On September 16, 1986, the trial court rendered an oral ruling finding that (1) the statutory provision allowing a mobile home park owner to terminate a lease with notice and a statement of reasons requires proof of cause; (2) the statutory provision requiring proof of cause to terminate a mobile home lot lease is constitutional; and (3) plaintiff was not entitled to possession of the lot since he failed to show cause for termination of the lease. The trial court further determined that the evidence presented at trial was not sufficient to support the relief sought in either counts I or II of defendant's counterclaim. The trial court's oral decision indicated that a written order would follow.

Prior to the entry of a written order, plaintiff and defendant filed their respective appeals from the court's oral decision. The parties

stipulated that the transcript of the trial court's oral decision was true and accurate and, if necessary, should stand in lieu of a written order. We subsequently entered an order allowing plaintiff "to supplement the record with a copy of the report of proceedings at the hearing on September 16, 1986, before the trial judge, containing the judgment order of the trial court and a stipulation of the parties that said report of proceedings is accurate." Our order did *not* state that the transcript of the oral decision *could stand in lieu of a written order.* (See *E. J. De Paoli Co. v. Novus, Inc.* (1987), 156 Ill. App. 3d 796, 798 (appellate court's jurisdiction cannot be conferred by agreement of the parties).) This case was originally set on our September 1987 docket. On July 28, 1987, we dismissed both appeals in an order pursuant to Supreme Court Rule 23 (107 Ill. 2d R. 23) after questioning our jurisdiction in the absence of a written order as required by the trial judge. *Beeding v. Miller* (1987), 156 Ill. App. 3d 1171 (unpublished Rule 23 order).

On July 31, 1987, plaintiff filed his motion with the trial court for entry of a written order. On August 6, 1987, a written order was entered in accordance with the trial court's prior oral decision. Plaintiff and defendant then filed their respective notices of appeal and cross-appeal from the written order. The parties have resubmitted their original briefs at our invitation.

### PLAINTIFF'S APPEAL

Plaintiff first contends that the trial court's interpretation of section 8 of the Act requiring the landlord to show proof of cause for non-renewal of the lease was error. Plaintiff argues that the section 8 language requiring a landlord to state the reasons for nonrenewal is "surplusage" and "does not mandate proof of those stated reasons to be successful in obtaining possession of tenant's leased premises." We disagree.

Section 8 of the Act provides:

> "Every lease of a mobile home or lot in a mobile park shall contain an option which automatically renews the lease; unless: (a) the tenant shall notify the owners 30 days prior to the expiration of the lease that he does not intend to renew the lease; or (b) the park owner shall notify the tenant 30 days prior to the expiration of the lease that the lease will not be renewed *and specify in writing the reasons, such as violations of park rules, health and safety codes or irregular or non-payment of rent.*" (Emphasis added.) Ill. Rev. Stat. 1985, ch. 80, par. 208.

■ It is well established that the court's function in construing statutes is to ascertain and give effect to the intent of the legislature.

(*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 362.) In ascertaining the intent of the legislature, the court should examine the entire statute, noting the subject it addresses and the legislature's apparent objective in enacting it. (111 Ill. 2d at 362; *Hettermann v. Weingart* (1983), 120 Ill. App. 3d 683, 690.) Each provision or word in a statute should be given a reasonable meaning and the statute should not be presumed to contain surplusage within its provisions. *Bloese v. Board of Education* (1985), 138 Ill. App. 3d 460, 464.

■ Construing section 8 in light of the other provisions of the Act indicates that the legislature did not intend that *mere recitation* of the reasons for nonrenewal should be sufficient for termination of a lease. In several provisions of the Act, the statutory grounds for termination of a mobile home lot lease are expressly limited. For example, the "reasons" listed in section 8 for nonrenewal of a lease include (a) violation of park rules; (b) violation of health and safety codes; or (c) irregular or nonpayment of rent. (Ill. Rev. Stat. 1985, ch. 80, par. 208.) Section 15 similarly limits the grounds for eviction to (a) nonpayment of rent; (b) failure to comply with park rules; and (c) failure to comply with local and State laws regulating mobile homes. (Ill. Rev. Stat. 1985, ch. 80, par. 215.) Section 17 provides that each lease contain a notice which states in pertinent part:

"You may continue to reside in the park as long as you pay your rent and abide by the rules and regulations of the park. You may *only* be evicted for *non-payment of rent, violation of laws, or for violation of the rules and regulations of the park and the terms of the lease.*" (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 80, par. 217.)

Finally, section 16 specifies *improper* grounds for eviction, such as (a) reprisals for a tenant's effort to secure or enforce any rights under the lease or laws; (b) reprisals for a tenant's good-faith complaint to governmental authority of the landlord's attempted violation of laws; or (c) reprisals for a tenant's participation in a homeowner's association or its activities. (Ill. Rev. Stat. 1985, ch. 80, par. 217.) Construing these sections together, it is apparent that the legislature intended to limit the bases for which a mobile home park owner can regain possession of a lot occupied by a mobile home.

Our supreme court has previously recognized the peculiar nature of mobile homes given their mobility and potential use as long-term dwellings. (*Rezler v. Village of Riverside* (1963), 28 Ill. 2d 142, 148.) Noting the necessity for special treatment of trailer parks, the court validated an ordinance requiring that trailers permanently attached to the ground or with their wheels removed comply with applicable zon-

ing and building codes. (28 Ill. 2d at 148.) The court noted that removal of wheels was not required for occupancy and it was not "unreasonable to view their removal as signifying a use of the trailer that is *more than transient [or] temporary.*" (Emphasis added.) (28 Ill. 2d at 150.) In *Palm Beach Mobile Homes, Inc. v. Strong* (Fla. 1974), 300 So. 2d 881, the supreme court of Florida has similarly recognized the peculiar nature of mobile homes. That court stated:

> "Mobile homes come to rest in established parks, the wheels are generally removed, they are anchored to the ground, because of forces of the wind, connections with electricity, water and sewerage are made, awnings are frequently attached, and to a large degree they lose their mobility except, unless, and until the wheels are restored, disruption of electrical, water and sewer connections is had and a certain amount of dismantling and crating is had, all at a substantial expense of the owner of the mobile home who had bought such home with the expectation of being able to remain in the park for a not unreasonable time so long as he abides by all the reasonable regulations established by the park owner. The removal from one park to another becomes more than a mere hitching to a truck or tractor and pulling it away. To a large degree, mobile homes are occupied by people in the lower income brackets who cannot spend several hundred dollars at the mere whim of a lessor park." (300 So. 2d at 886.)

Our own legislature has also recognized that the regulation of mobile homes and mobile home parks may contribute to the quality of housing for moderate and low income citizens. See Ill. Rev. Stat. 1985, ch. 111½, par. 711.

Because of the peculiar nature of mobile homes, limiting the bases for termination of a mobile home lot lease is necessary for the tenant's protection. We have previously held that the purpose of sections 6 and 9 of the Act is to protect tenants from landlords who would take unfair advantage of a tenant by raising rental fees and adding charges after the tenant had incurred the expense of affixing the dwelling onto the rented premises. (*People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 95.) This purpose of protecting tenants from unscrupulous landlords is similarly reflected by section 8 and other sections of the Act which limit the bases for which a landlord may elect to terminate a lease by nonrenewal or eviction. This protection would not be extended were the Act to be construed to allow a landlord to merely recite the stated grounds for termination without proving that those grounds exist. Under such a construction, a tenant

would be subject to the extreme hardships and expense of relocating the mobile home solely at the whim of the landlord. Were this intended by the legislature, the language requiring a landlord to state his reasons for nonrenewal would be meaningless. As noted by one commentator, requiring a landlord to show cause for terminating a tenancy recognizes the "incredible hardship wrought upon mobile home tenants whose tenancies are subject to the whims of park owners," and provides meaning to the other rights and obligations in the Act. (Thompson, *Mobile Home & Lot Leases*, in Representing Residential Tenants ch. 18, §18.16 (Ill. Inst. for Cont. Legal Educ. 1983).) Similarly, we believe that the trial court correctly interpreted section 8 of the Act to require that a mobile home park owner show cause for the nonrenewal of the lot lease.

Plaintiff next contends that the trial court's interpretation of section 8 renders that provision unconstitutional. Plaintiff first challenges the constitutionality of section 8 on the basis that it deprives him of his liberty and property rights without due process of law. We disagree.

The starting point for any due process analysis is the selection of the proper test to be applied to the challenged statute. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 367-68; *Rackow v. Human Rights Comm'n* (1987), 152 Ill. App. 3d 1046, 1058.) Statutes affecting a fundamental constitutional right, such as the expression of ideas, participation in the political process, travel among the States, and privacy with regard to the most intimate and personal aspects of one's life, should be subjected to strict scrutiny. (*Harris*, 111 Ill. 2d at 368; *People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 97; *Rackow*, 152 Ill. App. 3d at 1058.) Such statutes are presumptively invalid and will be validated only if a compelling State interest for their enactment can be shown. (*Village of Oak Lawn v. Marcowitz* (1981), 86 Ill. 2d 406, 416.) Where a statute under consideration does not affect a fundamental right, the appropriate level of scrutiny is the rational basis test. (*Harris*, 111 Ill. 2d at 368; *Rackow*, 152 Ill. App. 3d at 1058.) Under the rational basis test, the statute is presumed valid and will be upheld if it bears a rational relation to a legitimate legislative purpose and is neither arbitrary nor discriminatory. (*Harris*, 111 Ill. 2d at 368.) The party challenging the statute has the burden of proving that it is irrational. 111 Ill. 2d at 368.

In the instant action, plaintiff cites *Culp v. United States* (8th Cir. 1942), 131 F.2d 93, for the proposition that "[t]he right to the enjoyment of liberty and the right to use property are fundamental rights." Plaintiff argues that "[s]ince fundamental rights are involved, an infringement thereof must promote a compelling State interest." Plain-

tiff concludes that no compelling State interest exists for the enactment of section 8.

■■ We decline plaintiff's invitation to apply a strict scrutiny analysis to section 8. Pursuant to its police power, a State may enact a statute for the protection of the lives, health, morals, and general welfare of its citizenry. (See *Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill. 2d 323, 326; *City of Decatur v. Chasteen* (1960), 19 Ill. 2d 204, 210.) Our supreme court has recognized that while "[t]he privilege of every citizen to use his property according to his own will is both a liberty and a property right, *** *these rights are always subordinate to the interests of the public welfare.*" (Emphasis added.) (*Chasteen*, 19 Ill. 2d at 211.) Simply because a law may operate to impose burdens or restrictions on property is not determinative of its validity. 19 Ill. 2d at 210-11; see also *Penn Central Transportation Co. v. City of New York* (1978), 438 U.S. 104, 125, 57 L. Ed. 2d 631, 649, 98 S. Ct. 2646, 2659.

■■ ■ The legislature is vested with a large amount of discretion to determine not only what the interests of public welfare require, but also what measures are necessary to secure those interests. (*Chicago National League Ball Club v. Thompson* (1985), 108 Ill. 2d 357, 364; *Rackow*, 152 Ill. App. 3d at 1059.) To be a valid exercise of the police power, the enactment of the legislature must bear a reasonable relation to the public interest sought to be protected, and the means adopted must be reasonable to accomplish that objective. (*Sherman-Reynolds, Inc.*, 47 Ill. 2d at 327; *Village of Carpentersville v. Fiala* (1981), 98 Ill. App. 3d 1005, 1008.) A party challenging a law enacted under the State's police power must prove by clear and affirmative evidence that the law constitutes arbitrary, capricious, and unreasonable legislative action; that there is no permissible interpretation which justifies its adoption; or that it will not promote the safety and general welfare of the public. *Chasteen*, 19 Ill. 2d at 210.

This court recently addressed the constitutionality of a statute similarly restricting the use of private property. (See *Rackow v. Human Rights Comm'n* (1987), 152 Ill. App. 3d 1046.) In *Rackow*, the court considered legislation implemented to prevent discriminatory renting practices against people with children under the age of 14. (152 Ill. App. 3d at 1059.) The court noted that the purpose of that statute was to protect the family interest and promote equal treatment in society. (152 Ill. App. 3d at 1059.) The court concluded that while the plaintiffs raised a legitimate interest in the right to use their property as they saw fit, they were unable to demonstrate that their personal property rights outweighed the public need of assuring fair and equal housing opportunities and avoiding discrimination on the basis of family status.

152 Ill. App. 3d at 1060.

●■ In the instant action, the statutory language of section 8 as well as other sections of the Act limiting the bases for which a tenant's lease can be terminated reveals the legislature's desire to protect tenants from enduring the expenses and other tribulations encountered in moving a mobile home. We have previously noted a similar purpose in sections 6 and 9 of the Act and have held that to be a legitimate State interest. (*People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 95.) Here, section 8 protects mobile home park tenants from incurring the expenses of moving encountered when an unscrupulous landlord cites unreasonable, arbitrary, or nonexistent reasons for not renewing a lease. (See Ill. Rev. Stat. 1985, ch. 80, par. 208.) We find this protection to be a legitimate governmental interest in that it ensures the continued availability of quality housing for persons of low to moderate means. (See Ill. Rev. Stat. 1985, ch. 111½, par. 711.) We further find that limiting the bases for nonrenewal of a lot lease and requiring proof of cause are rationally related to achieving that goal. (See *Palm Beach Mobile Homes, Inc. v. Strong* (Fla. 1974), 300 So. 2d 881, 885 (restricting grounds for evicting mobile home lot tenant constitutes a reasonable and necessary regulation of the right to use property in view of the peculiar nature of mobile homes).) Therefore, we hold that section 8 does not violate plaintiff's right to due process under either the State or Federal Constitutions.

Plaintiff next challenges the constitutionality of section 8 on the basis that it violates his right to equal protection under the law. We disagree.

■■ The first test in assessing an equal protection claim is to determine if the statute in question operates to the disadvantage of a suspect class or infringes upon a fundamental right. (*Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 119; *People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 94.) If the statute in question creates a suspect classification, such as race, alienage, or national origin, or if the statute infringes upon a fundamental right, then the statute must promote a compelling State interest. (*Illinois Housing Development Authority*, 82 Ill. 2d at 119-20.) If a suspect classification or fundamental right is not found, the statute must simply bear a rational relation to a legitimate governmental interest. 82 Ill. 2d at 120.

■■ In the instant action, plaintiff does not argue that mobile home park owners are members of a suspect class. Plaintiff argues instead that the right to use, possess, enjoy, and dispose of his property is a fundamental right which is infringed upon through section 8 of the

Act by treating unequally a certain class of property owners whose land is leased by mobile home tenants. However, as stated above and recognized by both the United States and Illinois Supreme Courts, a property owner's right to use his property as he chooses is subordinate to the State's right to regulate that use for the protection of the general welfare. (*Penn Central Transportation Co. v. City of New York* (1978), 438 U.S. 104, 125, 57 L. Ed. 2d 631, 649, 98 S. Ct. 2646, 2659; *City of Decatur v. Chasteen* (1960), 19 Ill. 2d 204, 211.) Thus, the privilege of an individual to use his property freely is subject always to a legitimate exercise of police power under which new burdens and restrictions may be imposed when the public welfare demands. (*Village of Carpentersville v. Fiala* (1981), 98 Ill. App. 3d 1005, 1008.) Because the statute here involves neither a suspect classification nor a fundamental right, the rational basis test is applicable. (See 98 Ill. App. 3d at 1008.) Under traditional equal protection standards, the legislative classification must be based on some real and substantial difference between persons and bear a rational relation to the purposes of the statute. 98 Ill. App. 3d at 1008; see also *Illinois Housing Development Authority*, 82 Ill. 2d at 121.

In *Fiala*, this court upheld an ordinance which distinguished between single-family and multiple-unit dwellings in limiting the number of dogs in each residence. (*Village of Carpentersville*, 98 Ill. App. 3d at 1006.) The court noted that, with regard to keeping dogs, there were real and substantial differences between single-family and multiple-unit dwellings, such as space, density and proximity to others, noise levels, and structural considerations. (98 Ill. App. 3d at 1009.) The court held that limiting multiple-unit dwellings to less than two dogs per residence was a valid classification rationally related to the object of the ordinance, namely, promoting the general welfare and comfort of the building's residents. (98 Ill. App. 3d at 1009.) Similarly, in *Hedrich*, we held that a distinction between traditional landlords and mobile home park owners was a valid legislative classification rationally related to the purpose of protecting tenants of mobile home parks from encountering additional charges after the tenant had already expended funds by affixing his dwelling to the leased premises. *Hedrich*, 108 Ill. App. 3d at 95.

██ In the instant case, the purpose of section 8 is to protect mobile home tenants from experiencing the extraordinary expenses of relocating a mobile home by limiting the reasons for which a lot lease can be terminated. We have already concluded that this is a legitimate State interest. Because mobile home park tenants encounter greater burdens in establishing and maintaining their residences than do tradi-

tional tenants, we further hold that the classification involved here is rationally related to furthering the State's interest in protecting mobile home park tenants. Therefore, we hold that section 8 of the Act does not violate plaintiff's right to equal protection under the law.

Plaintiff next challenges the constitutionality of section 8 on the basis that it is special legislation in violation of article IV, section 13, of the Illinois Constitution. We disagree.

 █ Article IV, section 13, of the Illinois Constitution prohibits the legislature from passing any special or local law when a general law can be made applicable. (Ill. Const. 1970, art. IV, §13.) Whether a general law can be made applicable is a matter of judicial determination. (Ill. Const. 1970, art. IV, §13.) Special legislation confers a general privilege or benefit on a person or group of persons to the exclusion of others similarly situated and discriminates in favor of a select group without a reasonable basis. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 370; *Chicago National League Ball Club v. Thompson* (1985), 108 Ill. 2d 357, 367.) The standards used in determining whether a law violates this special legislation provision of the Illinois Constitution are the same as those used in determining whether a law violates equal protection. (*Harris*, 111 Ill. 2d at 370; *Chicago National League Ball Club*, 108 Ill. 2d at 368; *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 124.) When a classification does not affect a fundamental right or discriminate against a suspect class, the legislation must only bear a rational relation to a legitimate governmental interest. *Chicago National League Ball Club*, 108 Ill. 2d at 368.

██ Because of the special treatment surrounding the establishment and continued occupation of a mobile home dwelling (see *Rezler v. Village of Riverside* (1963), 28 Ill. 2d 142, 148; Ill. Rev. Stat. 1985, ch. 111½, par. 711), separate classification and regulation of mobile home parks is rationally related to the legitimate governmental interest of protecting tenants renting lots in those parks. Therefore, we hold that section 8 does not violate the special legislation provision of the Illinois Constitution.

Plaintiff next challenges the constitutionality of section 8 on the basis that it acts as a substantial impairment of plaintiff's property and contract rights. Essentially, plaintiff argues that the statute's requirement of automatic renewal imposes a new contractual condition on plaintiff. We disagree.

 █ Our supreme court has held that the right to contract is qualified by the State's legitimate exercise of police power. (*Memorial Gardens Association, Inc. v. Smith* (1959), 16 Ill. 2d 116, 128, *appeal*

*dismissed* (1959), 361 U.S. 31, 4 L. Ed. 2d 98, 80 S. Ct. 121.) The State may pass legislation which affects the right to contract as long as the legislation is reasonably necessary to secure the health, safety, morals, or general welfare of the community. (16 Ill. 2d at 128; see also *City of Evanston v. Create, Inc.* (1981), 85 Ill. 2d 101, 114.) In examining whether a contract has been unconstitutionally impaired, the court must determine whether (1) the statute has operated as a substantial impairment; (2) the State had a significant and legitimate public purpose behind the statute; and (3) the adjustment of rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose of the regulation. *Royal Liquor Mart, Inc. v. City of Rockford* (1985), 133 Ill. App. 3d 868, 877.

In the instant action, plaintiff states that the subject of impairment is the provision prohibiting a landlord from simply choosing not to renew a lease at its expiration. The contract in question here is the lease. The lease, executed subsequent to the statute in question, provides on its face that renewal will be automatic subject to either party giving adequate notice. Defendant argues that since the statute was in effect prior to execution of the lease and its provisions were incorporated in the lease, it does not constitute a substantial impairment of the contract. However, regardless of whether section 8 impairs the contract, we have already concluded that the State's purpose behind section 8—protecting tenants from the arbitrary termination of their tenancies—is legitimate, and the conditions imposed by section 8 are reasonable. Contrary to plaintiff's assertion, section 8 does not create a life tenancy for mobile home lot lessees. It merely requires landlords to establish *cause* for terminating the tenancy. Plaintiff continues to have the beneficial use of his property and may regain possession of it if he shows cause for termination. Therefore, we hold that section 8 of the Act is not an unconstitutional impairment of contract between mobile home park owners and lot lessees.

Plaintiff's final contention is that the trial court's finding that plaintiff was not entitled to possession of the leased premises was against the manifest weight of the evidence. We disagree.

In close cases, where findings of fact must necessarily be determined from the credibility of the witnesses, a reviewing court will defer to findings of the trial court unless they are against the manifest weight of the evidence. (*Chicago Investment Corp. v. Dolins* (1985), 107 Ill. 2d 120, 124.) For a finding or judgment to be against the manifest weight of the evidence an opposite conclusion must be clearly evident. (*In re Estate of Elson* (1983), 120 Ill. App. 3d 649, 655.) The trial

judge, as the trier of fact, is in a superior position to hear and weigh evidence and determine the credibility and demeanor of witnesses. 120 Ill. App. 3d at 655.

Our review of the record indicates that plaintiff's contentions are without merit. The reasons for nonrenewal stated in plaintiff's notice provided that defendant was in continual violation of rules 9 and 12 of the park rules and regulations. Specifically, the notice advised defendant that his lease would not be renewed because his lot was not kept neat and clean and because his disposal of garbage created a health hazard endangering other tenants in the park. Plaintiff states that these violations were supported by evidence that (1) a truck tire used as a children's sand box was also used by cats as a litter box; (2) weeds grew around the mobile home; (3) a child's toys were in the yard; (4) debris was scattered around the yard; and (5) the lot was "unkept."

Plaintiff's evidence consisted of pictures of the property and testimony of neighbors. Despite plaintiff's evidence, other witnesses testified that defendant's lot was well-kempt, mowed regularly, and devoid of weeds. Furthermore, no evidence was introduced establishing a violation of rule 12 regarding defendant's disposal of garbage. In fact, witnesses testified that there was nothing wrong with the manner in which defendant disposed of his garbage.

Prior to the conclusion of the hearing, the following colloquy took place:

"THE COURT: I find that most of the hearing so far has been really a tempest in a teapot.

MR. REESE [plaintiff's counsel]: I understand.

THE COURT: I have not seen anything here. In fact, the requirement of the statute is cause. I see nothing even remotely approaching cause."

Given the contrary views expressed at the hearing and the absence of evidence on rule 12, we do not find the court's conclusions to be against the manifest weight of the evidence.

Accordingly, we affirm the decision of the trial court holding that section 8 of the Act requires proof of cause, that section 8 of the Act is constitutional, and that plaintiff did not meet his burden of proof.

### DEFENDANT'S CROSS-APPEAL

On cross-appeal, defendant contends that the trial court erred in finding the evidence presented on his counterclaim insufficient to grant relief. Count I of defendant's counterclaim sought injunctive and compensatory relief for plaintiff's failure to comply with certain statutes and ordinances regulating mobile home parks. Count II was

brought under the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*). Defendant states that the trial court "abruptly and prematurely" terminated the evidentiary hearing wherein defendant was presenting evidence on his counterclaim and thereby erred when it rendered its decision against defendant on the counterclaim. This is simply not supported by the record.

■■■ At the point in the record where defendant claims the hearing was "terminated," the court merely advised *plaintiff's* attorney that it saw no cause in what was presented *by plaintiff* up to that point. The court then allowed the hearing to proceed, during which time plaintiff's counsel cross-examined defendant's wife regarding the allegations in defendant's counterclaim. Defendant's counsel was then given an opportunity to conduct a redirect examination and was further allowed to call defendant as an additional witness. Defendant's counsel's examination of defendant *concerning the upkeep of his own lot* was interrupted by the trial court with a suggestion that it was duplicative. *Counsel then rested* subject to the admission of exhibits. Thus, counsel's statement that the *trial court* terminated the hearing on the counterclaim is not supported by the record.

■■■ Moreover, it cannot be said that the trial court's decision on the evidence presented was against the manifest weight of the evidence. Of the two witnesses testifying in relation to plaintiff's violation of laws regarding the operation of the park, one testified that violations were not found during license eligibility inspections, and the other testified that an investigation for violations was merely underway. We can find nothing in the testimony or evidence presented which compels a conclusion clearly opposite of that rendered by the trial court.

Accordingly, we affirm the decision of the trial court holding that the evidence presented on defendant's counterclaim was insufficient to support the relief sought.

We further hold that each party pay his own costs and fees.

Affirmed.

LINDBERG, P.J., and NASH, J., concur.