JERRY FYKE *et al.*, d/b/a Northwood Mobile Estates, Plaintiffs-Appellees, v. DEBBIE MELTON, Defendant-Appellant.

Fourth District   No. 4—95—0233

Opinion filed April 26, 1996.

Darrell A. Woolums, of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellant.

David A. Rolf, of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellees.

PRESIDING JUSTICE COOK delivered the opinion of the court:

The Mobile Home Landlord and Tenant Rights Act (Act) (765 ILCS 745/1 *et seq.* (West 1992)) imposes severe restrictions upon landlords who rent mobile home lots. The landlords in this case did not comply with those restrictions, and we accordingly reverse.

Landlords Jerry and Gabriele Fyke (landlords), d/b/a Northwood Mobile Estates, brought this action to evict Debbie Melton (tenant) from a mobile home lot for unpaid rent. The trial court granted landlords possession of the lot and awarded them $2,700 in unpaid rent and attorney fees. Tenant appeals, contending she met her rent obligations under the terms of her written lease and that the rent increases allegedly resulting in the unpaid rents were invalid under the Act.

On May 1, 1992, tenant entered into a written lease with landlords for a mobile home lot in Maroa, Illinois. Rent was set at $90 per month for a year-to-year term (1992 lease). Paragraph 19 of the 1992 lease stated:

"19. Renewal Term and Holding Over: If not earlier terminated under other provisions of this lease, upon expiration of the original or a renewal term hereof this lease shall be renewed and extended automatically for a term equal in duration to that of the original term, upon the same terms and conditions, provided however, that either Owner or Tenant may give written notice to the other at least thirty (30) days prior to the expiration of such original or extended term, as the case may be, in which event this lease shall terminate upon the expiration of the original or extended term hereof during which such notice [of] election to terminate is given. Not withstanding [*sic*] the above, the Owner shall have the right to raise the rent for the renewal term by giv-

ing thirty (30) days['] written notice thereof to the Tenant, whereupon the Tenant shall have ten (10) days thereafter to give the Owner notice of his election to terminate this lease."

On March 26, 1993, less than 60 days before the end of the term, landlords sent notice that starting May 1, 1993, lot rent would be increased to $96 per month for all tenants. Gabriele testified she hand-delivered the notice to tenant and explained that the $96-per-month rate was for a month-to-month lease term. Tenant replied that she was not going to sign a month-to-month lease. Landlords then offered tenant the choice of a year-to-year lease at $126 per month or the month-to-month lease at $96 per month. Tenant testified she refused both options because, "I agreed I was still on my old lease of 1992 because it had a roll-over clause."

On April 21, 1993, tenant made a rent payment of $90. Landlords responded by sending tenant a "reminder note" that starting May 1993 lot rent was $96 per month. Tenant mailed landlords a check for $6. Landlords argue tenant thereby made "a conscious decision *** to go to a month-to-month lease." Every month thereafter tenant paid landlords $96.

On June 6, 1993, tenant wrote landlords, "I am *still* waiting for the new lease that you insisted I need to sign. If I do not receive a copy by mail within 15 days I will assume my old lease is still in effect." Landlords apparently delivered a copy of the new lease sometime in July 1993. The new lease provided rent was $96 per month for a month-to-month term. Tenant never signed this lease. On July 12, 1993, tenant requested a copy of her old lease in order that her attorney might compare the leases.

On June 24, 1994, landlords notified tenant that her rent would increase to $126 per month, effective August 1, 1994. In a June 28, 1994, letter, tenant replied that the rent increase "is not possible or legal." She continued:

"First, you are not allowing 60 days['] notice, second my lease does not renew in August.

My lease with you was dated effective May 1, 1992. This lease renews automatically on an annual bases [*sic*]. Therefore, if you wish to increase my rent, you must notify me *60 days* prior to my lease renewal of May 1st and the effective date must be May 1st."

Landlords gave tenant another notice, dated July 27, 1994, reiterating the $126-per-month rate and offering, as well, a year-to-year lease effective October 1, 1994, at $160 per month. Landlords tendered a written lease at the $160 rate, but tenant refused to sign. Instead, she continued to pay $96 per month in rent. Landlords filed this action for forcible entry and detainer on November 1, 1994, contending these payments resulted in a rent shortfall.

At trial, tenant argued that her 1992 written year-to-year lease was still effective under its roll-over clause. Tenant noted that under section 9 of the Act, park owners must notify tenants of a rent increase 60 days, not 30 days, before the expiration of the lease in order for that rent increase to be effective. 765 ILCS 745/9 (West 1992). Because landlords' rent increase notice on March 26, 1993, was untimely, tenant asserted her 1992 lease automatically renewed each May under its same terms. Landlords' subsequent attempt to increase rent was also ineffective because notice was not delivered 60 days before the May 1, 1995, expiration date.

The trial court disagreed. The court found that in March 1993 landlords gave tenant a choice between a month-to-month lease at $96 per month or a year-to-year lease at $126 per month. (As explained below, tenant had a third option under the Act, to continue the yearly term at the $90-per-month rent.) Landlords also tendered a signed month-to-month lease dated May 1, 1993. Tenant refused to sign the new lease but paid $96 in rent without protest. The court further found that under section 7 of the Act, the month-to-month lease became effective. Section 7 provides:

> "Effect of Unsigned Lease. If the tenant shall fail to sign a written lease which has been signed and tendered to him by the owner and shall further provide the owner with a rejection in writing of such offer, the tenant's continuation of possession and payment of rent without reservation shall constitute an acceptance of the lease with the same effect as if it had been signed by the tenant." 765 ILCS 745/7 (West 1992).

According to the trial court, the month-to-month lease was not a renewal of the 1992 lease but a new and different lease. Because the new rental term was monthly, the landlords' June and July 1994 rent increase notices were timely. Tenant did not pay the increased rent, and thus the court awarded landlords possession, $700 in unpaid rent, and $2,000 in attorney fees. This appeal followed.

On appeal, landlords contend the dispute is primarily a factual one, and in a forcible entry and detainer action the trial court's judgment should be upheld on review unless against the manifest weight of the evidence, citing *S&D Service, Inc. v. 915-925 W. Schubert Condominium Ass'n*, 132 Ill. App. 3d 1019, 1021, 478 N.E.2d 478, 481-82 (1985). We disagree. The parties largely agree on the facts, but disagree as to their legal import. The key issue is whether tenant's 1992 year-to-year lease was renewed in May 1993, or whether it was replaced by a month-to-month lease. Resolution of this issue depends heavily upon the correct construction of the Act and the 1992 lease.

■ Mobile home lot leases differ from traditional residential leases in several important respects.

"Generally, the residential landlord has a substantial investment in the improvements which he is leasing to his tenants, whereas, the mobile home landlord is basically leasing only a lot with utility hook-ups to his tenant. Unlike the traditional, residential tenant, a mobile home tenant moves his own dwelling onto the landlord's lot, and the dwelling becomes affixed to the lot. Because the tenant moves his dwelling onto the landlord's lot, the landlord-tenant relationship is rarely intended to be one of short duration." *People ex rel. Fahner v. Hedrich*, 108 Ill. App. 3d 83, 93, 438 N.E.2d 924, 931 (1982).

Once a mobile home has become affixed to a lot, the expense and hardship in later moving the mobile home can be considerable. In recognition of the unique situation of mobile home tenants, the legislature enacted the Act, which affords tenants certain protections. Section 6 requires landlords to offer new and prospective tenants a written lease. 765 ILCS 745/6 (West 1992). The lease must contain an option which automatically renews the lease, unless the landlord notifies the tenant 30 days prior to the expiration of the lease that the lease will not be renewed because of tenant misconduct. 765 ILCS 745/8(b) (West 1992). The landlord must specify in writing the reason for nonrenewal of the lease and must be able to show cause. 765 ILCS 745/8(b) (West 1992); *Beeding v. Miller*, 167 Ill. App. 3d 128, 135, 520 N.E.2d 1058, 1063 (1988). The terms for payment of rent and all other charges shall be specifically itemized in the lease. 765 ILCS 745/9 (West 1992). Landlords may condition the lease renewal upon tenant's acceptance of a rent increase. 765 ILCS 745/9 (West 1992); *Aydt v. De Anza Santa Cruz Mobile Estates*, 763 F. Supp. 970, 973 (N.D. Ill. 1991). However, notification of an increase shall be delivered 60 days prior to the expiration of the lease. 765 ILCS 745/9 (West 1992).

■ Thirty-five days before the 1992 lease expired landlords notified tenant that her rent would increase from $90 per month to $96 per month for a month-to-month lease or $126 per month for a year-to-year lease. Thirty days' notice was sufficient under paragraph 19 of the 1992 lease. However, section 9 of the Act required landlords to give tenant 60 days' notice prior to the lease expiration date of any rent increase. 765 ILCS 745/9 (West 1992). "Any provision of a lease whereby any provisions of this Act are waived is declared void." 765 ILCS 745/10 (West 1992). Landlords' first rent increase was therefore ineffective and untimely.

Landlords contend, however, that even if their notice was ineffective to increase the rent of the 1992 lease, the parties could nevertheless voluntarily enter into an entirely new lease. Landlords say ten-

ant chose to enter into a month-to-month lease when she began paying $96 per month without protest or reservation. We disagree. Tenant's actions did not demonstrate an intent to terminate her 1992 lease. Tenant never agreed to terminate the 1992 lease, and landlords were powerless to unilaterally terminate the lease without cause. 765 ILCS 745/8(b) (West 1992). Although tenant paid the $96 rate landlords quoted for a month-to-month lease, tenant refused to sign a month-to-month lease. Landlords offer no explanation why tenant would voluntarily assume a higher-rent, short-term lease. Tenant's decision to pay $96 per month is understandable, where the rent increase was apparently valid under paragraph 19 of the 1992 lease. However, the 1992 lease specifically provided that any renewal was for a term of equal duration. Because the parties never terminated the 1992 lease, we find that it automatically renewed for a year-to-year term on May 1, 1993. The lease renewed yet again on May 1, 1994.

We also find section 7 of the Act to be inapplicable. Landlords' tender of a new written lease had no effect where the 1992 lease never lapsed. Section 7 is applicable only where a landlord tenders a written lease to a tenant without one.

Because tenant's 1992 lease never terminated, landlords' attempts to raise the rent in June and July 1994 were untimely. By paying $96 per month, tenant not only met, but exceeded, her rent obligations. The judgment of the circuit court of Macon County is reversed.

Reversed.

McCULLOUGH and GARMAN, JJ., concur.