730 So.2d 786 (1999)
James HODGES, Sr., and Clarice Hodges, Appellants,
v.
MARION COUNTY, Florida, etc., Appellee.
No. 97-3396.
District Court of Appeal of Florida, Fifth District.
March 26, 1999.
*787 Gregory E. Tucci, Ocala, for Appellants.
Gordon B. Johnston, County Attorney, and Thomas D. MacNamara, Assistant County Attorney, Ocala, for Appellee.
GRIFFIN, C.J.
This action is the most recent of several proceedings arising out of the appellants' efforts to keep birds on their property. The current proceeding was brought by the Hodges to obtain a declaratory judgment that they are not required to obtain a special use permit or establish a grandfathered use in order to keep forty to fifty birds in two sheds on their property. The complaint initially alleged that the plaintiffs wanted to keep forty to fifty birds, but during the pendency of the action, the Hodges further reduced this number to sixteen birds (eight pairs), which they want to keep in two outbuildings they have constructed on their property. The Hodges essentially argue that their birds are "pets" and that therefore they are entitled to keep them on residential property. Marion County has persistently denied the Hodges the right to keep any birds in any outbuilding on their property, a position approved by the trial court.
One of the problems which has plagued these proceedings (and all of the many proceedings below) has been the complexity of, and the number of changes to, the relevant "pet"/specialty animal/aviary provisions of the Marion County Development Code. At his deposition, Marion County's zoning director stated that the current code contains no provision concerning "pets," other than a provision which defines the term, "pet, domesticated," as "all household pets normally kept for companionship." He testified that the code does not specifically provide that "pets" may be kept in any classification, but that the county considers this a permitted use of property in residential zones. At oral argument, counsel for Marion County confirmed that having pets was a valid "accessory use" of property.
The County contends that because the birds do not live in the Hodges' house, the Hodges' birds do not qualify as "pets" at all. However, we do not believe that the use of the word "household" requires all pet owners in Marion County to keep their pets in their dwelling. The use of the word "household" in reference to "pets" is really a shorthand reference to tame or domesticated animals. We also are certain that exotic birds can be sufficiently "domesticated" to qualify as "pets."
The County also has fairly consistently argued that birds are "speciality animals," which seem to be distinguishable from "domesticated *788 pets." "Specialty animals," are currently defined as:
SPECIALTY ANIMALSAll animals other than livestock and domestic pets; those native and imported animals which have been removed from the wild and are being bred, raised or kept for research, food, fur or skins, or for the production of income. Reptiles are included in this category.
§ 2.2.[1] As we read this provision of the code, "pets" are excluded from the definition of "speciality animals." Moreover, "speciality animals" are limited to those animals that are "bred, raised or kept for research, food, fur or skins, or for the production of income." Here, it appears to be undisputed that the Hodges are not currently raising any birds for the production of income (although they may make an occasional sale of their birds, to keep down the numbers, much as those who own dogs occasionally sell their puppies). Rather, they are pursuing a hobby, which is raising and keeping birds. Certainly it cannot be said as a matter of law that the Hodges' birds are "specialty animals" and the lower court made no such ruling.
Marion County has alternatively argued that the problem in this case is not that the birds are not being kept in the Hodges' "household," but that they are being kept in outbuildings on the property. Marion County has had difficulty, however, in pinpointing the reason why pets cannot be kept in out-buildings. During oral argument, the county appeared to have settled on the interpretation that while Marion County's residents can have pets on private property, they cannot keep those pets in outbuildings because the use of outbuildings for pets does not qualify as a valid "accessory use" of property. It is difficult to understand why "having pets" is a valid accessory use of property, but keeping those pets in an outbuilding does not permit the building to be an "accessory building." In fact, in our review of the code, we found that the version of the code enacted in 1992 lists a "private building for housing dogs, cats, or similar domesticated pets" as a permitted use in residential classification.
The only remaining issue in this case is whether the Hodges are nonetheless precluded from keeping birds in their outbuildings on the ground in that they are maintaining an "aviary." This was the basis of the lower court's ruling. Aviaries were added to the list of "special uses" on agricultural property (classifications A-1 through A-3) in 1996, and are not a "permitted" use of any type of property. The word "aviary" is defined in the code to mean "[a] place for keeping birds confined." The zoning director interpreted the code to preclude the maintenance of birds in the Hodges' shed without obtaining a "special use" permit.
The record in this case is insufficient to demonstrate that the Hodges are maintaining a prohibited "aviary." The term "aviary" is commonly understood to mean a large enclosure where birds fly freely. The definition of "aviary" used in the ordinance ("a place for keeping birds confined") is a standard definition which appears to mean that it is the place that confines the bird. It does not appear to be the intent of the ordinance to make every bird cage a prohibited aviary. Similarly, if a bird is confined in a cage that is contained within a building, the building does not thereby become an aviary. Since the word "aviary" appears to mean a structure in which the building itself is used as a cage for birds, not the situation in which birds are kept in cages in a structure, it is necessary to determine whether the sheds are aviaries or places where birds are kept in cages. Since the record in this case is insufficient to determine that the type of facility in which the Hodges are keeping their birds is an "aviary,"[2] the summary judgment entered by the trial court must be reversed. If, indeed, these sheds are not "aviaries" but a place where the Hodges keep cages containing birds, we can find no basis in the Marion County Code to prevent this use of the Hodges' property, provided that the birds are not being kept as part of a home *789 business or primarily for the production of income.
It appears that Marion County's efforts to protect its citizens from the Hodges' birds has now resulted in a series of animal ordinances so complicated that neither we nor counsel for Marion County can seem to find them all or make much sense of them. Perhaps the fair thing to do would be to start over and forthrightly address the issue of how many birds all residents of Marion County can have and where they can put them. The summary judgment entered below is reversed and this cause remanded for further proceedings.
REVERSED and REMANDED.
COBB, J., concurs.
DAUKSCH, J., dissents with opinion.
DAUKSCH, J., dissenting:
The actions of the county and the circuit court should not be disturbed by this court. First, because the county officials, acting on behalf of all the citizens of Marion County are the ones who should make the decisions like the one made here. Not courts sitting up and away from the fray.
The majority raises great sympathy from me for appellants and it would make me feel good to concur with them but, as I said, I cannot in good conscience second-guess the administrator whose judgment should be relied upon in cases such as this. I am also moved to say, in considering the majority opinion, that I have my personal experience from raising cows, pigs, dogs and cockatiels and know that as one goes down that list the propensity to propagate and the result thereof grows, seemingly geometrically. If you've got one bull and one cow, or one boar and one sow, you can keep things fairly in control. But you put two able and inclined birds together you're going to end up with an industrial aviary in no time and there may not be enough neighbors to whom to give or sell the progeny. Apparently the zoning folks in Marion County know this and that's why they say if you're going to raise birds, do it in your house.
NOTES
[1] "Specialty animals" are not defined as a "use" in any area. They were defined for the purpose of helping to define "domestic" or "domesticated" animals.
[2] While the Hodges have said that their sheds are "aviaries," given the confusion over terminology, it is unclear precisely what they mean.