**Colby S. and Monica WOLL,
Appellants**

v.

**MONAGHAN TOWNSHIP
and Monaghan Township
Zoning Hearing Board.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 7, 2008.
Decided May 22, 2008.

Richard Koch, Carlisle, for appellants.

David J. Lenox, Dillsburg, for appellee, Monaghan Township.

BEFORE: McGINLEY, Judge, and PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge McGINLEY.

Colby and Monica Woll (Landowners) appeal from the order of the Court of Common Pleas of York County (common pleas court) affirming the Monaghan Township Zoning Hearing Board (Board)

decision that Landowners were in violation of Sections 201.2 and 112.C of the Monaghan Township Ordinance (Ordinance) which limited the maximum number of domestic pets at any one single-family residence, as an accessory use, to no more than six.

Landowners live in a rural residential zone (RR) in Monaghan Township. They have fourteen dogs. There is no fence around the property and the dogs are uncontrolled. Neighbors complained on numerous occasions to the police about being threatened physically by the dogs and continual and incessant barking 24–hours a day.

Sometime in August 2005, Landowners contacted the zoning officer regarding the possibility of getting permission to establish a dog kennel at the premises. The zoning officer advised Landowners that a kennel was not a permitted use in the RR district.

On January 12, 2006, the zoning officer issued an "Enforcement Notice" to Landowners that they were in violation of Section 112.C, which defines the keeping of domestic animals as an accessory use, and Section 201.2, which delineates the permitted principle uses in the RR district. In essence, a maximum of six domestic animals may be kept as pets as an accessory use in a single family residence in the RR district.[1]

Landowners appealed to the Board and a hearing was held on March 20, 2006. They argued that the Ordinance which regulated the number of domestic pets as an accessory use was vague and arbitrary.

---

1. Section 112.C of the Ordinance provides, in pertinent part: "DOMESTIC PETS—the non-commercial keeping of no more than six (6) adult nonfarm animals that are locally available for purchase as pets, as an accessory use to a dwelling unit."

"Accessory use" is defined in this Section as "[a] use customarily incidental and subordinate to the principal use or building located on the same lot as the principal use or building."

Testimony was offered by the zoning hearing officer and one of the complaining neighbors, Mickey Long (Mrs. Long). Mrs. Long testified that she lived next door to Landowners. There was "continual incessant obsessive barking" at all hours of the day and night. At times the dogs sounded "like they were murdering each other." Notes of Testimony, March 20, 2006, (N.T.) at 34; Reproduced Record (R.R.) at 76a. She testified that she was unable to sleep and the noise had grown to the point where she no longer used her back deck to dine outside. N.T. at 35; R.R. at 77a. She also testified that the dogs were often in her yard barking at her and defecating on her property.

Landowners presented no testimony although a stipulation was entered on the record that Landowners continued to keep fourteen dogs.

On April 18, 2006, the Board sustained the action of the zoning officer and found Landowners to be in violation of Section 201.2 of the Ordinance. Landowners appealed and the common pleas court affirmed:

> The [trial] Court finds that the provisions of the Monaghan Township Ordinance, which regulate the number of domestic pets as an accessory use, are within the Township's general authority to promote the health, safety and welfare of the community. Further, based on the evidence presented before the Zoning Hearing Board, Plaintiffs [Land-

owners] were clearly in violation of Section 201.27 and Section 112.C of the Township Zoning Ordinance. Therefore, Plaintiffs' [Landowners] Appeal is denied.

On appeal[2], Landowners raise three issues, all of which this Court finds to be without merit.

### I.

In their first issue, Landowners challenge the course of action taken by the Township. They assert that the Township failed to follow the procedures outlined in Section 700.4 of the Ordinance. Specifically, Landowners contend that the Township was required to bring this action before a magisterial district judge. Landowners have misconstrued the law.

Section 700.4 of the Ordinance, which follows verbatim Section 617.2 of the Pennsylvania Municipalities Planning Code[3] (MPC), added by section 62 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10617.2, provides, in part:

> 700.4 *Enforcement Remedies*—Any person, partnership or corporation who or which has violated or permitted the violation of the provisions of this Zoning Ordinance ... ***upon being found liable therefore in a civil enforcement proceeding commenced by the Township,*** pay a judgment of not more than five hundred dollars ($500) plus all court costs, including reasonable attorney fees

**2.** This Court's role is limited to reviewing the record, including all of the testimony and the written decision of the Board, to determine solely whether the Board abused its discretion or erred as a matter of law. *In re Petition of Dolington Land Group*, 576 Pa. 519, 526, 839 A.2d 1021, 1026 (2003) (citing *C & M Developers Inc. v. Bedminster Township Zoning Hearing Board*, 573 Pa. 2, 820 A.2d 143 (2002)). "Under the traditional standard applied when determining the validity of zoning ordinances, a zoning ordinance must be pre-

sumed constitutionally valid unless a challenging party shows that it is unreasonable, arbitrary, or not substantially related to the police power interest that the ordinance purports to serve." *C & M Developers Inc. v. Bedminster Township Zoning Hearing Board*, 573 Pa. at 14, 820 A.2d 143, 150–51 (2002).

**3.** Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

incurred by the Township as the result thereof. *No judgment shall commence or be imposed, levied or be payable until the date of the determination of a violation by the district judge* ....

Monaghan Township Ordinance, § 700.4 (emphasis added).

Section 700.3 of the Ordinance, which follows verbatim Section 616.1 of the MPC, also added by section 62 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10616.1, sets forth the civil enforcement procedure for violations of zoning ordinances:

700.3 *Violations*—If it appears to the Township that a violation of this Zoning Ordinance ... the Township shall initiate the enforcement proceedings by sending an enforcement notice ...

\* \* \*

2. An enforcement notice shall state at least the following:

\* \* \*

C. The specific violation with a description of the requirements that have not been met, citing in each instance the applicable provisions of the Ordinance;

D. The date before which the steps for compliance must be commenced and the date before which the steps must be completed;

E. *That the recipient of the notice has the right to appeal to the Zoning Hearing Board* within a prescribed period of time in accordance with the procedures set forth in the Ordinance, and

F. That failure to comply with the notice within the time specified, *unless extended by appeal to the Zoning Hearing Board,* constitutes a violation, with possible sanctions clearly described.

Monaghan Township Ordinance, § 700.3 (emphasis added).

To summarize the procedure, a landowner in receipt of an enforcement notice of violation of a zoning ordinance from a municipality may appeal that notice to the zoning hearing board. Ordinance, § 700.3; Section 616.1 of the MPC, 53 P.S. § 10616.1.

■ A landowner's failure to appeal the notice of violation results in a final adjudication that the landowner violated the zoning ordinance. If the landowner fails to appeal, he may not later deny there was a violation. If after receiving an enforcement notice, the landowner *continues* to violate the zoning ordinance *without appealing the enforcement notice,* Section 616.1(c)(6) of the MPC, 53 P.S. § 10616.1(c)(6), dictates a conclusive determination of violation, and entitles a municipality to either initiate district justice action for sanctions or file a complaint in equity to enjoin the landowner from further violations (independent of the MPC). *Township of Maidencreek v. Stutzman,* 164 Pa.Cmwlth. 207, 642 A.2d 600 (1994).

■ If the landowner *does* appeal to the zoning hearing board the MPC vests in the *zoning hearing board* exclusive jurisdiction to hear such an appeal. The MPC does not confer upon the magisterial district justice jurisdiction to hear appeals from notices of violations; rather the MPC vests in the magisterial district justice the power to levy fines once the violation is finally adjudicated by the zoning hearing board.

Consequently, because Landowners did appeal the enforcement notice, *there was no conclusive determination of a violation upon which the Township could have proceeded to seek sanctions.* The Township could not commence an action before the magisterial district judge until the issue of whether a violation occurred was determined by the zoning hearing board. *Township of Concord v. Concord Ranch, Inc.,* 664 A.2d 640 (Pa.Cmwlth.1995).

The jurisdiction of the magisterial district judge is only invoked in one of two situations when either: (1) the enforcement notice is appealed *and* there is a final adjudication by the zoning hearing board that there was a violation, or (2) the enforcement notice is not appealed and the violation notice, *per se*, becomes binding and unassailable.

Here, Landowners appealed the enforcement notice; consequently, there was nothing for the magisterial district judge to act upon unless and until a violation was conclusively established through the appeal process. *See* Township of Maidencreek. This Court notes that the violation is still not conclusively established in light of Landowners' appeal to this Court and will not be until their appeal as of right is exhausted.

Accordingly, the Township followed the proper procedure in accordance with the Ordinance and was not, as Landowners contend, required to file an action with the magisterial district judge.

## II.

Next, Landowners question whether a municipality may arbitrarily fix a number that is an acceptable number of pet dogs that may be maintained at a single-family residence. Landowners assert that the Township "has offered no evidence to support the contention that a prohibition against more than six (as opposed to five or seven, for example) pets contributes in any substantial way to the health, safety, morals or well being of the community." Landowners' Brief at 18. Like the common pleas court, this Court is not persuaded.

It is well settled law in Pennsylvania that a municipality may enact zoning ordinances reasonably restricting the property right to protect and promote the public health, safety and welfare under its police power. *Cleaver v. Board of Adjustment*, 414 Pa. 367, 200 A.2d 408 (1964).[4] A zoning ordinance is presumed to be valid. *Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328 (1975). Therefore, one challenging the zoning ordinance has the heavy burden of establishing its invalidity. *Id.* Where the validity of the zoning ordinance is debatable, the legislative judgment of the governing body must control. *Bilbar Construction Co. v. Easttown Township Board of Adjustment*, 393 Pa. 62, 141 A.2d 851 (1958).

Contrary to Landowners' assertion, the Township was not required to affirmatively establish that it enacted the Ordinance based on empirical, factual evidence.[5] Rather, Landowners, the parties

---

4. Here, the Township enacted its zoning ordinance with the stated purpose to "promote, protect and facilitate the public health, safety, morals, general welfare, coordinated and practical community development...." Monaghan Township Ordinance, Article 1, § 102.

5. Also, this Court is not persuaded by Landowners' emphasis on the zoning officer's inability to state exactly why the Township chose to limit the number of dogs at six, as opposed to five or seven or some other number. First, Landowners did not have five or seven dogs. They had fourteen, and they did not present any evidence that the constant, unrelenting disturbances caused by their dogs were *not* related to the fact that there were twice the number of dogs as authorized by the Ordinance. In fact, to argue that the noise level would not increase in relation to an increase in the number of dogs goes against common sense.

Moreover, as one court pointed out, numbers chosen as legal limitations are often arbitrary: e.g., speed limits, building ordinances, statutes of limitation, etc. The necessity of selecting some number does not automatically render an ordinance invalid. *Holt v. City of Sauk Rapids*, 559 N.W.2d 444 (Minn.Ct.App.1997). It is the lack of a rational relationship be-

challenging the Ordinance, had the initial burden to demonstrate that there was *no* rational relationship between the Ordinance and a health or safety goal of the community. *Shohola Falls Trails End Property Owners Ass'n v. Zoning Hearing Board of Shohola Township,* 679 A.2d 1335 (Pa.Cmwlth.1996), *appeal denied,* 548 Pa. 651, 695 A.2d 788 (1997). Landowners failed to meet this burden.

No witnesses testified on behalf of Landowners and no evidence was presented by Landowners to shoulder their burden of showing that regulating the number of dogs per household was unrelated to controlling the problems of dog noise as they affect the health and general welfare of the community. The credible evidence actually established the opposite, that is, a rational relationship existed between the ordinance and its ostensible objective which was to "avoid nuisances from occurring and from being a detriment to the neighborhood." N.T. at 18; R.R. at 60a. Testimony established that noise from the fourteen dogs disrupted the neighbors' right to a peaceful existence.

Because Landowners failed to meet their burden to show that limiting the number of dogs per household in a residential neighborhood is not substantially related to controlling the problems of dog noise and to the health and general welfare of the community as affected by dogs, the Ordinance must be upheld.[6]

## III.

 Finally, Landowners argue that keeping "Domestic pets" was not a valid "accessory use" under the Ordinance subject to the township's regulation because there is no relationship between the keeping of pets and the health, welfare, morals and safety of the Township residents. This argument, in essence, is based on the same faulty rationale as the prior issue. Therefore, it is rejected.

In any event, "Domestic pets" is clearly defined ... as "an accessory use to a dwelling unit" so long as they are limited in number to six or less. Monaghan Township Ordinance § 212(c). The Township's definition of "accessory use" requires that the use be customarily incidental and subordinate to the principal use. There is no ambiguity and absolutely nothing for this Court to interpret on appeal. Based on the clear language of the Ordinance this Court does not hesitate to conclude that dogs are permitted as an accessory use to the extent that they remain "customarily incidental and subordinate to the principal use ... on the same lot."

---

tween an ordinance and the general well-being that causes an ordinance to be struck down.

**6.** This Court notes that many jurisdictions have upheld similar dog limitation ordinances. *Gates v. City of Sanford,* 566 So.2d 47 (Fla.Dist.Ct.App.1990) (upholding ordinance limiting number of dogs and cats to three of each in a residence); *Holt v. City of Sauk Rapids,* 559 N.W.2d 444 (Minn.Ct.App. 1997) (upholding ordinance prohibiting keeping more than three dogs per residential unit); *People v. Yeo,* 103 Mich.App. 418, 302 N.W.2d 883, 885–86 (1981), *cert. denied,* 457 U.S. 1134, 102 S.Ct. 2961, 73 L.Ed.2d 1351 (1982) (same); *Downing v. Cook,* 69 Ohio St.2d 149,

431 N.E.2d 995 (1982) (upholding ordinance prohibiting keeping more than three adult dogs on comparatively small residential lots); *Village of Carpentersville v. Fiala,* 98 Ill. App.3d 1005, 54 Ill.Dec. 521, 425 N.E.2d 33 (1981); *State v. Schuler,* 1997 WL 76337 (Minn.App.1997) (not reported in A.2d) (upholding dog limitation ordinance where it was "debatable" that limitation was substantially related to controlling problems of dog noise and odor); *State v. Beckert,* 137 N.J.L. 562, 61 A.2d 213 (1948) (upholding an ordinance prohibiting the ownership of "more than three dogs of licensing age" within a designated area).

Monaghan Township Zoning Ordinance, § 212(c).[7]

The order of the common pleas court is affirmed.

## ORDER

AND NOW, this 22nd day of May, 2008, the order to the Common Pleas Court of York County in the above-captioned case is hereby affirmed.

7. Other courts have concluded that dogs and other household pets are uses of land regulated by zoning. *See, e.g., Graff v. Zoning Hearing Board of Town of Killingsworth,* 277 Conn. 645, 894 A.2d 285 (2006); *Hodges v. Marion County,* 730 So.2d 786, 787 (Fla.App.1999) (having pets, including raising and maintaining of birds as hobby, was valid accessory use of residential property); *DaPurificacao v. Zoning Board of Adjustment,* 377 N.J.Super. 436, 443, 873 A.2d 582 (2005) (housing of racing pigeons as hobby on property located in residential zone governed by accessory use provisions of town zoning regulations); *Tucker v. Zoning Board,* 148 N.C.App. 52, 53, 557 S.E.2d 631 (2001) (maintenance of ten to fifteen dogs in noncommercial kennel evaluated as accessory use to residentially zoned property); *Weber v. Board of Franklin County Commissioners,* 20 Kan.App.2d 152, 158, 884 P.2d 1159 (1994) (raising and keeping of up to twenty-five greyhounds on land in rural residential and agricultural district subject to zoning authority of town).