IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Warwick Township    :
         :
    v.    : No. 2071 C.D. 2016
         : Argued: June 8, 2017
Jaime Winters and Jason Winters, :
    Appellants  :


BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE JULIA K. HEARTHWAY, Judge
     HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI    FILED: July 21, 2017


   Jaime Winters and Jason Winters (collectively, the Winters), husband and wife, appeal from an order of the Court of Common Pleas of Chester County (trial court) denying their post-trial motion and entering judgment against them for $19,651.49, consisting of a $500 fine, a $148.50 filing fee as well as $19,002.99 in attorney fees relating to their violation of the Warwick Township (Township) Zoning Ordinance (Ordinance).


**I.**

   The Winters own property located at 423 Rock Run Road, Pottstown, Pennsylvania (property) but do not reside there. The property is located in the R-3 residential zoning district of the Township and contains a single-family dwelling which the Winters lease to a tenant, as well as a two-story "garage" that was

renovated by a previous owner for the purpose of being used as a residence. It is undisputed that neither the previous owners nor the Winters obtained a zoning permit or variance to use the detached garage as a second dwelling.

On January 29, 2014, Township Zoning Officer Joseph Boulanger (Officer Boulanger) mailed the Winters a "Violation and Cease and Desist Enforcement Notice" (Enforcement Notice)[1] alleging that they were utilizing the detached garage on their property as a second dwelling in violation of the Ordinance. (Reproduced Record (R.R.) at 394a.) As pertinent, the Enforcement Notice provides for three zoning violations: conducting two principal uses on the same parcel in violation of Section 1900(C) of the Ordinance; failing to obtain a proper zoning permit for a change in use of land or buildings without first obtaining a proper permit in violation of Section 2101(B)&(C) of the Ordinance; and failing to obtain a

---

[1] As pertinent, Section 616.1 of the Pennsylvania Municipalities Planning Code (MPC) provides, in relevant part:

> (a) If it appears to the municipality that a violation of any zoning ordinance enacted under this act or prior enabling laws has occurred, the municipality shall initiate enforcement proceedings by sending an enforcement notice as provided in this section.

> (b) The enforcement notice shall be sent to the owner of record of the parcel on which the violation has occurred, to any person who has filed a written request to receive enforcement notices regarding that parcel, and to any other person requested in writing by the owner of record.

Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202; Section 616.1(a),(b) of the MPC was added by Section 60 of the Act of December 21, 1988, P.L. 1329, 55 P.S. § 10616.1(a),(b).

certificate of occupancy in violation of Section 2104(B) of the Ordinance. The Enforcement Notice further advised, "**Therefore you are hereby directed to cease and desist this activity within fifteen (15) days**." (R.R. at 395a) (emphasis in original). The Enforcement Notice went on to provide:

> Failure to discontinue the above violations within the time frame specified, unless an appeal of this Notice of Violation has been filed with the Zoning Hearing Board, constitutes a violation of the Township Zoning Ordinance. Violation of the Zoning Ordinance may result in the institution of [a] civil enforcement proceeding before a District Justice where the district Justice may impose a Civil Penalty of up to Five hundred ($500.00) dollars plus court costs, including the Township's attorneys' fees, incurred as a result of such action. Each day that the violation continues shall constitute a separate violation and may subject you to a daily fine. The Township may also institute other appropriate action at law or in equity which may be necessary to enforce the provisions of the Zoning Ordinance.
>
> * * *
>
> Please be advised that you have the right to appeal this Notice of Violation and Cease and Desist Order in writing to the Township Zoning Hearing Board within thirty (30) days if you believe that I have misinterpreted or misapplied the Zoning Ordinance.

(R.R. at 395a-396a.)

The Winters did not appeal the Enforcement Notice to the Township Zoning Hearing Board (ZHB), choosing to forego the associated costs of an appeal, and instead directly contacted Officer Boulanger about the alleged violations. During

3

those discussions, the Winters repeatedly denied using the garage as a dwelling and insisted that there was no violation that they could "cease and desist." However, Officer Boulanger was unable to confirm the veracity of the Winters' protestations because they prohibited him or any other Township official from coming onto their property.

On July 10, 2014, almost seven months after serving the Enforcement Notice, the Township filed an enforcement action in the magisterial district court seeking civil penalties and attorney fees.[2] In response, in August 2014, the Winters allowed Officer Boulanger onto their property, but prohibited him from taking any pictures. Officer Boulanger was, however, provided with photographs taken prior to the inspection.

The Site Visit Report (Report) generated as a result of Officer Boulanger's visit provides that the property's detached "garage" is actually a two-story accessory structure with a metered electrical system. The garage's ground floor is unfinished and primarily used for storage, but contains a fully functioning washing machine and dryer as well as a gas-fired furnace heat system that serves the upper-floor via a forced air duct system. No overhead garage door provides access to the ground floor space.

---

[2] Section 617.1 of the MPC provides that magisterial district courts "shall have initial jurisdiction over proceedings brought under section 617.2." 53 P.S. § 10617.1. Section 617.2(a) of the MPC authorizes a municipality to commence an action seeking civil penalties for violations of a zoning ordinance. 53 P.S. § 10617.2(a).

The garage's upper floor is accessed through stairs on the side of the building opposite the driveway. This floor has both electricity and heating and is completely finished with hardwood floors, tiling and walls that are dry-walled and painted. There is a bathroom with a tile shower area, but no fixtures were in place at the time of the inspection. Adjacent to the bathroom appears to be a bedroom that has a built-in closet. This room contains a mattress and bed frame, several containers, some books and personal items, as well as an unconnected gas range/stove. The upper floor also has a kitchen area that contains an installed air conditioning unit, cabinets in an "L" shape and wire shelving containing household items. There appears to be a living room and/or office area, which contains two sofas, a large flat panel television connected to the cable wall outlet, and a folding table and desk chair. On the table at the time was a computer printer and stacks of papers. The Report further notes:

> Much of the paperwork that was readily visible had letterhead for a company called North American Roofing. To the best of our knowledge, neither Mr. nor Mrs. Winters works for this company. During the inspection Mr. Winters was asked if all the items in the structure were his. He stated "No, most of it belongs to a friend but some of it was his." There is also a Jeep Wrangler parked in the driveway adjacent to the structure, which Mr. Winters stated belonged to a friend, which is not the tenant of the main house. The Jeep does not have a valid inspection or registration sticker on the license plate.

(R.R. at 146a.)

Based on Officer Boulanger's observations and "numerous pictures that document someone with a white pick-up truck parked in the driveway directly

5

adjacent to the structure on many nights until the next morning, it is difficult to conclude that someone isn't using the space for sleeping and general habitation. . . . I believe that the citations issued against the [Winters] are valid." (*Id.*)

On October 13, 2014, the magisterial district judge entered a default judgment against the Winters for $648.50, consisting of a $500 fine plus $148.50 in fees and costs. However, because the judgment failed to award reasonable attorney fees,[3] on November 13, 2014, the Township appealed.

## II.

### A.

In December 2014, the Township filed a complaint, later amended, seeking "an amount of $500, plus court costs and attorneys' fees, including at least $4,783 incurred up to the hearing before the Magisterial District Justice [sic] and all reasonable attorneys' fees incurred in pursuing this appeal." (R.R. at 49a.) In response, the Winters filed an Answer, New Matter and Counterclaim, denying that the garage was used as a second dwelling, alleging that the enforcement action was the result of "personal animosity" and seeking judgment in their favor, legal costs and fees, as well as emotional and punitive damages. (R.R. at 75a.) Following preliminary objections by the Township and responses thereto, on May 15, 2015, the trial court sustained those objections and dismissed the Winters' New Matter and

---

[3] Section 617.2(a) of the MPC expressly provides that any person found liable for violating a zoning ordinance "shall . . . pay a judgment of not more than $500 plus all court costs, including reasonable attorney fees incurred by a municipality as a result thereof." 53 P.S. § 10617.2(a); *accord Township of South Whitehall v. Karoly,* 891 A.2d 780, 783 (Pa. Cmwlth. 2006).

6

Counterclaim "without prejudice to replead [*sic*] within twenty (20) days of entry of this Order." (R.R. at 125a.)

The Winters then filed an Amended New Matter and Amended Counterclaim, contending that the Township's enforcement action is "unenforceable and not effective," (R.R. at 126a) and that the enforcement action was the result of personal animosity. Once more, they sought judgment in their favor, costs and fees associated with litigation, as well as emotional and punitive damages.[4] Following another round of preliminary objections and responses, on November 6, 2015, the trial court entered an order sustaining the objections and dismissing the Amended New Matter and Amended Counterclaim. The trial court noted:

> Defendants' Amended New Matter and Amended Counterclaim attempt to allege that the Township's Enforcement Action was "unenforceable and not effective". However, once a landowner has been given notice of a zoning violation pursuant to the [MPC], that landowner can only contest the asserted violations by way of an appeal to the municipality's zoning hearing board. Defendants failed to appeal the Cease and Desist Notice to the Warwick Township Zoning Hearing Board. In addition, with regard to the validity of the Notice itself, we find that it complies with 53 P.S. §10616.1(c). Given our resolution of Plaintiffs' first Objection, we do not reach the remaining Objections.

---

[4] The Winters do not raise any issues relating to claims of bad faith, including the allegedly high costs for appealing the Enforcement Notice. *See Raum v. Board of Supervisors of Tredyffrin Township*, 370 A.2d 777 (Pa. Cmwlth. 1976); *see also Highway Materials, Inc. v. Board of Supervisors of Whitemarsh Township*, 974 A.2d 539 (Pa. Cmwlth. 2009).

(R.R. at 209a) (internal citations omitted).

## B.

On April 28, 2016, the trial court held a *de novo* hearing because the Winters refused to stipulate to limiting the *de novo* appeal to whether the Township was entitled to attorney fees "incurred in prosecuting this matter over the past two years, two months, and thirty days." (R.R. at 225a.)

Before the trial court, the Township offered the testimony of Officer Boulanger, the Township Zoning Officer who issued the Enforcement Notice and inspected the garage. Officer Boulanger testified that his investigation began after he received a complaint from the Winters' neighbor, who later provided photographs relating to the garage's use as a second dwelling. Officer Boulanger stated that after he issued the Enforcement Notice, Mrs. Winters called him denying the violation. At no time during these conversations did Officer Boulanger tell Mrs. Winters that she did not need to appeal the Enforcement Notice. He did, however, ask to inspect the property to confirm Mrs. Winters' protestations or to see whether the activity ceased and desisted. Mrs. Winters denied that request.

In August 2014, Officer Boulanger finally inspected the garage. After testifying about his observations during this inspection, which mirror those made in his Report, Officer Boulanger then concluded "that the structure, to our determination after the site visit, was still being used as a second residence on the property." (R.R. at 294a.) When asked how he could be certain that someone was living in the garage, Officer Boulanger explained:

8

Because it appeared that somebody was living there. There was a TV. There was a couch. There were chairs. There was a table set up with all kinds of business documentation that does not relate to Mr. Winters' business. There was a bed and a box spring and bed frame in the bedroom. [There] were numerous boxes stacked up in a closet. There were also numerous piles of -- I'm not sure what, but for some reason it was felt they had to be covered up. There was all kinds of other stuff on the storage racks there that Mr. Winters stated was not his. So, there's a separate electric service there. There were air conditioners in the windows. There's a central heating system that doesn't serve the first floor, but serves the second floor only. There's a washer and a dryer in the first floor. There's a smoke detector, I believe. There's functioning lighting. If it walks like a duck and looks like a duck, usually it is a duck.

(R.R. at 321a-322a.)[5]

Mr. Winters also provided testimony at this hearing. As pertinent, he testified that the garage was never used as a dwelling but instead for storage space by the Winters and a friend. Mr. Winters denied that anyone has ever slept in the garage, although he admitted to going to the garage with other people several times a week to "watch football games and baseball games and relax and watch TV and have a couple drinks." (R.R. at 347a.) Mr. Winters explained that he and his wife refused an inspection following the Enforcement Notice because they "were getting ready to

_____

[5] Regarding the assessment of attorney fees, the Township also offered the testimony of Patrick McKenna, who serves as a solicitor in a number of municipalities in Chester County, including Warwick Township. Mr. McKenna admitted that there were several entries in the itemized bill submitted for attorney fees relating to Pennsylvania Uniform Construction Code (UCC), 34 Pa. Code §§ 401.1–405.42, violations against the Winters that were dismissed by the magisterial district judge. (R.R. at 334a.)

go on vacation for several weeks" and did not come back until late February. (R.R. at 344a.) He explained that they did not appeal the Enforcement Notice because "Joe Boulanger said that you don't have to, and so did the supervisors." (R.R. at 354a.) They also did not contact the Township after their vacation because they assumed the matter was "just water under the bridge." (R.R. at 355a.) Mr. Winters admits that since Officer Boulanger's visit, the garage has remained substantially the same.

On July 19, 2016, the trial court issued a verdict against the Winters for an amount totaling $19,651.49, consisting of a $500 fine, $148.50 in filing fees as well as $19,002.99 in attorney fees.[6] Shortly thereafter, the Winters filed post-trial motions for "a new trial and/or a Judgment N.O.V. and/or limit the amount of attorney fees in an amount to be determined reasonable at the time of the District Justice Hearing." (R.R. at 404a.) On November 22, 2016, the trial court issued an order denying these motions, reasoning:

> The record is clear that the noticed violations by the Township continued past the fifteen (15) day cease and desist period set forth in the [Enforcement Notice]. The evidence presented by the Township establishes that the garage was used as a residence or a business office by someone other than the Winters in violation of Township ordinances after the fifteen (15) day cease and desist period. . . . [T]here is sufficient evidence that the garage continued to be used in violation of the Township ordinances by

---

[6] Given that it was undisputed that the Winters did not appeal the Enforcement Notice, we are nonplussed as to why the Township did not file for judgment on the pleadings when the appeal was taken. *See, e.g.*, *Lower Mount Bethel Township v. North River Co., LLC*, 41 A.3d 156, 161 (Pa. Cmwlth. 2012) (holding that trial court did not err when granting judgment on the pleadings where the property owners failed to appeal an enforcement notice to the ZHB). However, the Winters do not take issue with that failure.

10

someone other than the Winters after the fifteen (15) day cease and desist period. Evidence contrary presented by Jason Winters at trial was not found to be credible. After the issuance of the Notice of Violation, and despite Defendants['] protestations that there was no ongoing violation of the zoning ordinances as set forth in the Notice, the Township was denied access to the property for months when seeking to conduct an inspection to insure compliance with Township ordinances. When Township officials eventually were able to gain access in order to conduct the inspection, there was evidence of habitation of the structure and use of it as an office by someone other than the Winters. . . .

In addition, the [Enforcement Notice] provided the Winters with fifteen (15) days within which to cease and desist the noticed violation activity. The Notice is sufficiently specific to inform the Winters that they were in violation and had fifteen (15) days within which to cease any activity in violation of Township ordinances as noticed. Furthermore, the Notice also informed the Winters that they could challenge the zoning violation determination by appealing to the Township Zoning Hearing Board. A fair reading of the Notice suggests that any activity in violation of the Township zoning laws cited in the Notice outside of fifteen (15) days would be subject to civil enforcement proceedings and a civil penalty of up to $500 per day per violation, plus costs. The Winters' failure to appeal because they took the position that there were no ongoing zoning ordinance violations does not preclude the Township from initiating enforcement proceedings. An appeal to the ZHB by the Winters would challenge whether there was a violation of the zoning ordinance as noticed, and whether the notice of violation was sufficient. Failure to appeal waives these issues. *See Township of Penn v. Seymour*, 708 A.2d 861 (Pa. Cmw1th 1998); *Moon Township v. Cammel*, 687 A.2d 1181 (Pa. Cmwlth 1997). Therefore, the only question before this court is whether the penalty imposed was proper. The Township sought enforcement for only 1 day of violation on only 1 noticed zoning provision ($500 plus costs). This penalty is proper.

11

> Finally, the Township's attorneys' fees, although significant when compared to the fine and costs involved, are warranted pursuant to 53 P.S. § 10617.2 and were established by competent evidence. *See Lower Mount Bethel Township v. North River Company, LLC*, 41 A.3d 156 [(Pa. Cmwlth. 2012)].

(R.R. at 497a-498a.) This appeal by the Winters followed.[7]

## III.

### A.

On appeal, the Winters contend that the Township's enforcement action is invalid because the Enforcement Notice was defective and deprived them of the ability to appeal to the ZHB. As best as we can discern, this is because the Enforcement Notice allegedly failed to inform the Winters that they needed to appeal to the ZHB, regardless of whether they stopped using the garage as a dwelling.

Section 616.1(c) of the MPC provides that an enforcement notice shall state at least the following:

> (1) The name of the owner of record and any other person against whom the municipality intends to take action.

> (2) The location of the property in violation.

---

[7] When reviewing the trial court's denial of post-trial motions, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *Commonwealth ex rel. Corbett v. Manson,* 903 A.2d 69, 73 n.4 (Pa. Cmwlth. 2006).

(3) The specific violation with a description of the requirements which have not been met, citing in each instance the applicable provisions of the ordinance.

(4) The date before which the steps for compliance must be commenced and the date before which the steps must be completed.

(5) That the recipient of the notice has the right to appeal to the zoning hearing board within a prescribed period of time in accordance with procedures set forth in the ordinance.

(6) That failure to comply with the notice within the time specified, unless extended by appeal to the zoning hearing board, constitutes a violation, with possible sanctions clearly described.

53 P.S. § 10616.1(c). We have explained that a township cannot initiate a civil enforcement proceeding or collect civil penalties under Section 617.2 of the MPC, 53 P.S. § 10617.2, unless the enforcement notice satisfies these requirements. *See, e.g.*, *City of Erie v. Freitus*, 681 A.2d 840, 842 (Pa. Cmwlth. 1996).

Contrary to the Winters' protestations, the Enforcement Notice complies with all the requirements set forth in Section 616.1(c) of the MPC. It is addressed to the Winters, identifies the garage and outlines the specific provisions of the Ordinance in violation. The Enforcement Notice also directs them to stop the violating use within 15 days or, in the alternative, advises that they had the right to appeal to the ZHB "within thirty (30) days if you believe that I have misinterpreted or misapplied the Zoning Ordinance." (R.R. at 396.) "Failure to discontinue the above violations within the time frame specified, unless an appeal of this Notice of Violation has been filed with the Zoning Hearing Board, constitutes a violation of the Township Zoning Ordinance." (R.R. at 395.)

13

In any event, the Winters cannot in good faith argue that the Enforcement Notice deprived them of an appeal to the ZHB. By their own admission, the Winters declined to appeal to the ZHB for financial reasons. Moreover, their adamant refusal to accept that they used the garage as a dwelling belies any assertion that they attempted to "cease and desist" that violation. Because the Winters were clearly of the belief that Officer Boulanger "misinterpreted or misapplied the Zoning Ordinance," (R.R. at 396a) they were informed of their right to appeal to the ZHB within 30 days.

**B.**

The Winters also contend that the trial court abused its discretion when imposing a one day fine for violating the Ordinance because "[t]he overwhelming weight of evidence in this case is that the [garage] was not used by the Winters as a 'second dwelling' after the issuance of the Notice." (The Winters' Brief at 20.) However, we have explained:

> If a landowner does not appeal a zoning violation notice to the zoning hearing board, **the failure to appeal renders the violation notice unassailable**. Therefore, in the event a landowner does not appeal to the zoning hearing board and the municipality files an enforcement action with a district justice, neither the district justice nor a common pleas court may conduct a *de novo* review of the question of whether the landowner violated the zoning ordinance. In that circumstance, the only question before the district justice and the Common Pleas Court is whether the penalty imposed for the violation was proper.

*Township of Penn v. Seymour*, 708 A.2d 861, 864–65 (Pa. Cmwlth. 1998) (emphasis added). Because the Winters admit to receiving the Enforcement Notice from which

they never appealed, that Enforcement Notice resulted in a conclusive determination that their use of the garage was a violation of the Ordinance.

In any event, the evidence shows that the garage was used as a dwelling 15 days after service of the Enforcement Notice. Officer Boulanger's testimony, along with the Report and photos that he offered, all lead to the conclusion that the garage was being used as a dwelling well beyond the cease and desist period, and Mr. Winters admits that since Officer Boulanger's visit, the garage has remained substantially the same. The trial court also found any contrary testimony and evidence provided by the Winters not to be credible. Because the "weight to accord to evidence is exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses," we will not disturb the trial court's determination. *Rising Sun Entertainment, Inc. v. Commonwealth*, 829 A.2d 1214, 1219 (Pa. Cmwlth. 2003) (citing *Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999)).

## IV.

Finally, the Winters contend that the trial court erred in awarding $19,002.99 in attorney fees when the Township only took the appeal to collect $4,783 in attorney fees resulting up until the *de novo* appeal.[8] The Winters also contend that "the fees collected for the violation of zoning ordinances must be a figure even lower than $4,783.00, because that figure included attorney time for the consultation,

---

[8] Beyond those fees resulting from the Township's prosecution of alleged UCC violations, the Winters do not specifically articulate what attorney fees and costs contained in the Township's invoices are unreasonable.

15

preparation of notices and pleadings, and prosecution of alleged UCC violations, upon which the Township did not prevail." (The Winters' Brief at 28-29.) We have explained:

> Section 617.2(a) of the [MPC] provides that any person who has violated the provisions of a zoning ordinance enacted under the MPC "**shall**, upon being found liable therefor in a civil enforcement proceeding commenced by a municipality, pay . . . reasonable attorney fees incurred by a municipality as a result thereof." 53 P.S. § 10617.2(a) (emphasis added). "[A]n award of costs and attorney fees pursuant to [s]ection 10617.2 [sic] of the MPC is not limited to costs and fees incurred as a result of the action before the district justice but includes all costs and attorney fees incurred as a result of the violation." *Borough of Bradford Woods v. Platts*, 799 A.2d 984, 991 (Pa. Cmwlth. 2002). Whether an award of attorney fees is reasonable depends upon "the amount of work performed, the character of services rendered, the difficulty of the problems involved, and the professional skill and standing of the attorney in the profession." *Township of South Whitehall v. Karoly*, 891 A.2d 780, 784 (Pa. Cmwlth. 2006). The trial court has discretion to decide the reasonableness of an award of attorney fees, and an appellate court should not alter the trial court's decision absent a clear abuse of discretion. *Borough of Bradford Woods*, 799 A.2d at 991.

*Lower Mount Bethel Township v. Gacki*, 150 A.3d 575, 581 (Pa. Cmwlth. 2016) (emphasis in original).

Although a township or municipality is entitled to attorney fees incurred on appeal, *see Platts*, 799 A.2d at 991, what complicates this matter is that a *de novo* appeal was made by the Township for the collection of fees that should have been awarded by the district judge. Notwithstanding, the appeal involved more than the

16

recoupment of fees because the Winters refused to stipulate to a hearing solely on that issue and, instead, made numerous filings challenging the validity of the enforcement proceeding. Accordingly, the issue is when can attorney fees resulting from an appeal for attorney fees constitute "costs and attorney fees incurred as a result of the violation." *See Platts*, 799 A.2d at 991; *see also* 53 P.S. § 10617.2(a).

If, at the outset of the appeal, the parties stipulated to limit the trial court's hearing to the collection of attorney fees, it would be clear that any costs advanced by the Township would not be borne by the Winters because the appeal was not for the enforcement of a zoning violation. Notwithstanding, once the Winters refused to stipulate to the scope of the appeal and challenged the entire enforcement action, the Township was stuck with having to present the merits of the case at the *de novo* hearing.

The Winters also challenge any fees awarded for pursuit of fees incurred in enforcing the violations regarding the UCC. Because, under Section 617.2(a) of the MPC, attorney fees can only be awarded for enforcement proceedings brought to enforce provisions of a zoning code, to the extent that any fees were awarded to enforce provisions of the UCC, those fees are improper.

Given all of the above, we affirm in part the trial court's order, but vacate that portion of the order awarding the Township attorney fees and costs. Accordingly, we remand to the trial court with instruction to recalculate the amount of attorney fees and costs that the Township incurred as a result of the Winters'

17

zoning violation, excluding those fees expended solely for the purpose of collecting attorney fees or prosecuting alleged UCC violations.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Warwick Township | : | |
| | : | |
| v. | : | No. 2071 C.D. 2016 |
| | : | |
| Jaime Winters and Jason Winters, | : | |
| Appellants | : | |

# **O R D E R**

AND NOW, this 21st day of July, 2017, it is hereby ordered that the Court of Common Pleas of Chester County's (trial court) order dated November 22, 2016, is affirmed in part and vacated in part, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

     Jurisdiction relinquished.

_____
DAN PELLEGRINI, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Warwick Township                :
                                     :
          v.               :    No. 2071 C.D. 2016
                                     :    Argued:  June 8, 2017
Jaime Winters and Jason Winters,  :
                    Appellants  :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE JULIA K. HEARTHWAY, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

**OPINION NOT REPORTED**

**CONCURRING OPINION BY**
**JUDGE COHN JUBELIRER**             **FILED:  July 21, 2017**

I join the Majority's well-written opinion regarding the attorney fees and the adequacy of the "Violation and Cease and Desist Enforcement Notice" (Enforcement Notice) issued by Warwick Township.  I also agree with the Majority that a landowner's failure to appeal an enforcement notice to the zoning hearing board precludes the owner from challenging whether there was a zoning violation on the date of the enforcement notice.  I write separately because I agree with the Winters that the Enforcement Notice issued in this case is ambiguous about whether timely compliance with the Enforcement Notice would still subject an owner to enforcement remedies.

The Majority explains that "[i]f a landowner does not appeal a zoning violation notice to the zoning hearing board, the failure to appeal renders the

violation notice unassailable," and that "neither the district justice nor a common pleas court may conduct a *de novo* review of the question of whether the landowner violated the zoning ordinance." (Majority Op. at 14 (emphasis omitted) (quoting *Twp. of Penn v. Seymour*, 708 A.2d 861, 864-65 (Pa. Cmwlth. 1998)).) Moreover, a landowner "can contest the asserted [zoning] violations only by way of appeal to the municipality's zoning hearing board and cannot merely defend the charge when the municipality seeks ordinance violation fines before a district justice." *City of Erie v. Freitus*, 681 A.2d 840, 842 (Pa. Cmwlth. 1996) (citing *Johnston v. Upper Macungie Twp.*, 638 A.2d 408, 410 (Pa. Cmwlth. 1994)). However, Section 616.1(c)(6) of the Pennsylvania Municipalities Planning Code (MPC)[1] also requires enforcement notices to state that "**failure to comply with the notice within the time specified**, unless extended by appeal to the zoning hearing board, constitutes a violation." 53 P.S. § 10616.1(c)(6) (emphasis added). This Court has explained that "**[i]f** after receiving an enforcement notice, the landowner **continues to violate** the zoning ordinance without appealing the enforcement notice, Section 616.1(c)(6) of the MPC . . . dictates a conclusive determination of violation . . . ." *Woll v. Monaghan Twp.*, 948 A.2d 933, 937 (Pa. Cmwlth. 2008) (bold emphasis added, italics omitted).

In both *Seymour* and *Johnston*, this Court found those landowners' failures to appeal to the zoning hearing board rendered their enforcement notices unassailable. In both cases, the landowners also failed to comply with the enforcement notices. In *Seymour*, a landowner refused to bring the number of dogs on his property into compliance with the zoning limit and then sought to challenge

---

[1] Act of July 31, 1968, P.L. 805, added by Section 60 of the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 10616.1(c)(6).

the ordinance's constitutionality before the court of common pleas and before this Court on appeal. In *Johnston*, landowners failed to comply with the notice by continuing to use their residential property for business purposes past the specified deadline. Such failure to timely comply, coupled with the failure to appeal, rendered their enforcement notices unassailable, precluding them from the ability to contest the asserted violations.

Relevant to this discussion, the Enforcement Notice here states that "you are in violation of [] the Warwick Township Zoning Ordinance . . . ." (R.R. at 52a.) It also states in large, bold print: "you are hereby directed to cease and desist this activity within fifteen (15) days." (*Id.* at 53a.) With regard to penalties for the zoning violations, the Enforcement Notice provides:

> **Failure to discontinue the above violations** within the time frame specified, unless an appeal of this Notice of Violation has been filed with the Zoning Hearing Board, **constitutes a violation** of the Township Zoning Ordinance. Violation of the Zoning Ordinance may result in the institution of civil enforcement proceeding before a District Justice where the [D]istrict Justice may impose a Civil Penalty of up to Five hundred ($500.00) dollars plus court costs, including the Township's attorneys' fees, incurred as a result of such action. Each day that the violation continues shall constitute a separate violation and may subject you to a daily fine.

(*Id.* (emphasis added).)

One interpretation of this Enforcement Notice is that it is the failure to discontinue the zoning violation that will subject the owner to sanction and that discontinuing the violation within the time specified will not. Thus, although a landowner who does not appeal the Enforcement Notice and takes the affirmative steps required to discontinue the violation effectually concedes that a violation existed on his property at the time the notice was issued, it does not appear, based upon the language used in the Township's Enforcement Notice, that the landowner

RCJ - 3

will be subject to sanction.[2]  Moreover, if he seeks to present evidence of his timely compliance in any subsequent enforcement action against him, it would be inaccurate to say that he "contest[s] the asserted **violations**." *Freitus*, 681 A.2d at 842 (emphasis added).  Rather, he would contest that he has **not complied** with the Enforcement Notice.  His decision to comply, and not appeal, should not preclude him from presenting such evidence.  The magisterial district judge would then make a factual inquiry into whether the landowner discontinued the violation within the time period specified by the violation notice in order to determine whether the landowner is liable for continuing violations.

The ambiguity over whether timely compliance with this Enforcement Notice protects a landowner from sanctions does not aid the Winters in the present case.  Here, although the Winters attempt to argue that "after receipt of the Notice, the Structure was not used as a dwelling," (*see* Appellants' Br. at 13), the Majority correctly points out that the Winters' "adamant refusal to accept that they used the garage as a dwelling belies any assertion that they attempted to 'cease and desist' that violation." (Majority Op. at 14.)  The Winters do not provide any evidence or testimony that they took affirmative steps to change their property within the period outlined in the violation notice.  In effect, although they did also argue that they "ceased and desisted," given these facts, the Winters are really seeking to collaterally contest the Township's application of the Enforcement Notice itself.  Thus, any confusion arising from the Enforcement Notice regarding the effect of compliance is not applicable.

**RENÉE COHN JUBELIRER,** Judge

---

[2] Because this Enforcement Notice involves the imposition of a penalty, I believe the Rule of Lenity is applicable to our interpretation.